## L. C. NEWCOMB v. PAUL E. TESKE AND OTHERS.[1]

January 2, 1948.

No. 34,509.

*I. R. Galob* and *E. J. Messner,* for appellants.
*Thomas H. Strizich,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying a motion for a new trial in an action wherein a permanent injunction was directed to be issued against defendants Paul E. Teske and Eva Teske, his wife, restraining them from further remodeling a garage into a dwelling on their 50 x 100 foot lot in the village of Hibbing.

The Teskes had made application to the village council for a building permit to so remodel the garage. They had previously altered a single dwelling unit on the same lot into a duplex, so that the remodeling of the garage would have resulted in three dwelling units on the lot, which is forbidden by the applicable zoning ordinance of the village. Some 40 days later, they commenced their remodeling project on the garage, no permit having been granted. August 1, 1946, they had completed about 95 percent of the work and expended about $4,200 when a temporary order from the district court was obtained by the village restraining them from further remodeling the garage. August 13, 1946, plaintiff, an adjoining landowner, commenced his suit against defendants and obtained a temporary restraining order preventing the remodeling.

The basis for plaintiff's suit is that defendants Teske were violating the village zoning ordinance. August 19, 1946, the court ordered that the restraining order remain in effect until a decision on the merits. The hearing on the merits was held December 26, 1946. On February 26, 1947, an injunction permanently restraining the Teskes from converting their garage into a dwelling unit was ordered by the court. The motion of defendants Teske for a new trial was denied, and this appeal followed.

The Teskes do not deny that they violated zoning ordinance No. 109 of the village as it stood before the enactment of ordinance No. 148, enacted by the village council during the time this suit was pending. At that hearing, the Teskes were permitted, over plaintiff's objection, to file a supplemental answer, which pleaded ordinance No. 148, together with ordinance No. 147, likewise enacted while this suit was pending. No. 147 created a planning commission for "city planning" in the village. No. 148 was an amendment to certain sections of ordinance No. 109, and so far as pertinent to this suit it provided:

"The Planning Commission, subject to the approval and confirmation of the Village Council, in each case as hereinafter provided shall have the power to grant adjustments and exceptions and special permits in and to any of the provisions of this Ordinance to the extent of the following *and no further:*

"(1) To vary or modify the strict application of any of the regulations or provisions contained in this Ordinance in cases in which there are *practical difficulties or unnecessary hardships* in the way of such strict application." (Italics supplied.)

Under ordinance No. 148, the village council, on February 3, 1947, granted, pursuant to the recommendation of the commission, created under ordinance No. 147, a permit for the Teskes to complete the remodeling of the garage. The commission in their recommendation said:

"In recommending the issuance of this special permit to Mr. Teske we wish to make it perfectly clear to all that the members of the Commission do neither condone the practice of starting projects without the required official written permission of the constituted authorities nor do they approve of the construction or use of two buildings on one lot or lots for dwellings or living quarters, not only at this time but also in the future. This action is not to be construed as the setting of a precedent in the matter of recommending special permits for similar applications in time to come.

"* * * Our special committee of competent investigators reported

that the conversion was approximately 95% completed and that a sum of approximately $4,200 had already been expended thereon. *It is our consensus of opinion that a hardship, however created, exists in view of this large outlay which can only be recovered over a long period of years by rent income and not by a reconversion of the building to its previous condition* which would only add to the costs so far incurred." (Italics supplied.)

It was the contention of the Teskes that the action of the planning commission, with the approval of the council, was valid. In granting the permanent injunction, the court ruled that the Teskes were not within the purview of the provisions of ordinance No. 148, because there were no practical difficulties or hardships in the application of the zoning ordinance which they themselves had not created.

The Teskes contend that the parties stipulated at a hearing, with the consent of the court, that if a special permit should be granted them by the village council on the authority of ordinance No. 148 the question then before the court would be moot, or if the permit was refused a permanent injunction should issue. They also contend that the court erred in finding that the planning commission in recommending and the council in granting the permit acted arbitrarily, and that the court so found without the facts before it upon which the commission and council acted. They also assign as error the court's conclusion that irreparable damage had been caused for which injunctive relief would be appropriate.

■ A careful review of the record shows that, although at the hearing on December 26, 1946, counsel discussed the effect which ordinance No. 148 would have on the case, the court ended the discussion by merely stating that the case would remain *in statu quo* until the council acted on the proposed ordinance and that the matter could be brought on for hearing again by either party. Therefore, there was no stipulation.

■ The Teskes set up ordinance No. 148 as their defense to the action. Its provisions, so far as they are relevant to this controversy, are set out above. The court ruled that the "practical

difficulties or unnecessary hardships" necessary before a special permit could be granted under that ordinance were not shown. The issue here in this respect is whether the evidence is sufficient to sustain the court's finding that the facts did not bring the case within the purview of the ordinance. The record is clear that the only hardship involved was that created by the Teskes themselves in proceeding without a permit. The language quoted from the commission's report is significant. It amounts to a concession that the commission acted capriciously and arbitrarily in recommending a permit to the Teskes which, under similar circumstances, would never be given to anyone else. That aspect of the case entirely aside, the facts would not support a finding that there was an unnecessary hardship or a practical difficulty justifying an exception to the provisions of the zoning ordinance. The Teskes knew that they were proceeding without a permit when they started remodeling and that in doing so they were violating the ordinance. They knowingly violated the law, and the fact that they spent money in so doing does not justify them nor avail them of the hardship clause in the ordinance. Their situation is to be considered as if no work had been done.

The Teskes are in no different position from anyone else living in a restricted or zoned district. Their avowed purpose in installing this additional unit was to obtain additional revenue. If this purpose brings them within the "practical difficulties or unnecessary hardships" provision of the ordinance, so could every other resident or owner in a zoned district bring himself within that exception, thereby defeating the purpose of the zoning ordinance. In Cohen v. Rosevale Realty Co. Inc. 121 Misc. 618, 619, 202 N. Y. S. 95, 96, the court said:

"Existing buildings refer to those that lawfully exist. Buildings erected in violation of a restrictive covenant are illegally in existence. The defendant having built in violation of law cannot benefit by such illegal conduct."

See, also, Bouchard v. Zetley, 196 Wis. 635, 220 N. W. 209; Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852.

■ If the permit were to be sustained, the Teskes would have three dwelling units on their 50 x 100 foot lot. This was precisely what zoning ordinance No. 109 sought to prevent. It provided:

"In the Residential District, unless otherwise provided in this Ordinance, no building or premises shall be used and no building shall be extended as to its outside dimensions, or erected or altered except for one of the following uses:

"(1) Single detached house used as residence by not more than one (1) family or by not more than two (2) families."

Plaintiff, a next-door neighbor, had a home built in accord and in conformity with the zoning ordinance. Money damages would not be sufficient to compensate him for the Teskes' nonconformity. Certainly, he could not be expected to move. An equitable remedy by and for the benefit of an adjoining property owner is proper in this type of case. Bouchard v. Zetley, 196 Wis. 635, 220 N. W. 209; Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852; Boehner v. Williams, 213 Iowa 578, 239 N. W. 545.

In Welton v. 40 East Oak St. Bldg. Corp. (7 Cir.) 70 F. (2d) 377, 383, certiorari denied, 293 U. S. 590, 55 S. Ct. 105, 79 L. ed. 685, the court considered the violation of a zoning ordinance. The building had been erected over protest, in that it was in violation of a set-back provision of the zoning ordinance. The court considered the fact that the adjacent owners might not suffer a large financial loss as against the investment of defendant and said:

"* * * In the fight for better living conditions in large cities, in the contest for more light and air, more health and comfort—the scales are not well balanced if dividends to the individuals outweigh health and happiness to the community. Financial relief to appellants is not the only factor in weighing equities. There is involved that immeasurable but nevertheless vital element of respect for, and compliance with, the health ordinance of the city. The surest way to stop the erection of high buildings in defiance of zon-

ing ordinances is to remove all possibility of gain to those who build illegally. Prevention will never be accomplished by compromise after the building is erected, or through payment of a small money judgment to some individual whose financial loss is an inconsequential item."

Injunctive relief was proper.

Affirmed.

