FELIX McCAVIC AND ANOTHER v. ANTONIO DeLUCA,
ALSO KNOWN AS ANTONIO DeLUCCA.
LLOYD LONG v. SAME.[1]

March 16, 1951.

Nos. 35,373, 35,374.

[1]Reported in 46 N. W. (2d) 873.

*Stone, Manthey & Carey,* for appellant.
*S. L. Cohen* and *Jerome Kaner,* for respondents.

KNUTSON, JUSTICE.

Appeals from orders denying new trials. Two cases, identical in all respects except as to the property owned by the respective plaintiffs, have been consolidated for hearing and have been considered here together.

The city of Virginia, Minnesota, has adopted no general zoning ordinance. It has, by ordinance, established building lines for certain designated streets providing for a building or setback line 15 feet from a street or avenue.

Defendant owns lot 30 of block 12, Rooney's Addition to Virginia. Plaintiffs McCavic own lot 31, which adjoins defendant's lot on the west, and plaintiff Long owns lot 29, which adjoins defendant's lot on the east. Each plaintiff has on his lot a two-story dwelling house in which he lives. Lots 17 to 32, inclusive, of the block of which plaintiffs' and defendant's property is a part, front on the north side of Thirteenth street north. Fronting on the south side of the street are lots 1 to 16, inclusive, of block 1, Northside Addition to Virginia. All lots on both sides of the street are 25 feet in width.

On August 7, 1946, defendant applied to the city for and obtained a building permit authorizing him to erect a one-story cement-block building on his lot 30, which application and permit is in these words:

"Application and Building Permit
"Date: August 7, 1946.
"To Building Inspector
City of Virginia, Minn.
"Dear Sir:
"I respectfully apply for a Permit to build kind of building—
"Store

on Lot No. 30, Block No. 12, Rooney's Addition, size of building 24x50, No. of stories 1, sewer connection 6″ Y 94′ 6″ East of center manhole on 9th Ave. W., material cement block. Basement walls, cement block. Front wall of building to be set back 15 ft. from property line. No drain tile around foundation or under basement floor shall be connected to the sanitary sewer. I will need the use of—feet of public property during construction.

"If allowed to build, under this permit, I will assume the responsibility of any and all accidents that may occur in connection with construction of building, or other things permitted under this permit, and will observe all city ordinances, rules and regulations governing same.

"Antonio DeLucca          809 13th St. N.
Signature of Owner
"John ?                   724 11th St. N.
Name of Builder           Address of builder
"No. 34                   J. W. Hejda
                          "Approved
                          By: R. A. Henle
                          Building Inspector"

Defendant thereafter proceeded to build. It soon became apparent to plaintiffs that he was extending his building inside the setback line. They both protested to him and also complained to the city authorities. Plaintiff Long made several such complaints. Defendant was advised by the city engineer that he could not build inside the 15-foot setback line. He proceeded nevertheless and completed the building about the latter part of November 1948. When completed, the building was eight feet from the street line, which meant that it extended seven feet into the space prohibited by the setback line.

The buildings in the block in which the property of plaintiffs and defendant is located are part residential and part commercial. Some have complied with the setback lines and some have not. A brief description of the buildings in the block will show that no

determined effort has been made by the city to enforce the setback lines provided by the ordinance. As has been said, the McCavics occupy the lot west of defendant's lot. Their house conforms to the setback line. A residence occupies lot 32 to the west of the McCavic property, and that conforms to the setback line. Plaintiff Long occupies lots 29 and 28 to the east of defendant, and his house conforms to the line. The porch on the house on lot 27 extends a few feet beyond the line, and the buildings on lots 26 and 25 extend about ten feet into the forbidden zone. Two grocery stores on the corner lots 18 and 17 extend about ten feet over the line. Other houses on this side of the street all conform. On the opposite side of the street, a tavern on lot 6, which is six lots from the west corner, extends approximately seven feet into the forbidden zone. The residences on lots 5, 7, 9, and 15 have porches which extend three or four feet beyond the line. The residence on lot 12 extends approximately ten feet beyond the line. Houses on lots 2, 4, 10, and 14 conform.

The McCavics acquired their property in 1941. They thereafter converted it into a two-family dwelling at a cost of about $8,000. At the time of trial, they estimated that their property was worth about $12,000. Plaintiff Long acquired his residence in 1936 for $1,000 and thereafter spent about $9,000 remodeling it. He estimated that his property also was worth about $12,000.

Aside from remodeling on the locations where they had existed formerly, no building in the block has been erected so as to encroach upon the setback line since either of the plaintiffs has become the owner of his property.

The trial court found that defendant had knowingly and wilfully violated the ordinance, and it granted a mandatory injunction requiring him to remove that part of his building which protruded beyond the 15-foot setback line. From orders denying new trials, these appeals were taken.

Defendant contends, first, that there is no authority for the establishment of the setback lines for commercial buildings, and

therefore that the ordinance, insofar as it applies to his building, is void.

The city of Virginia is governed by a home rule charter adopted June 8, 1909. The city had operated under L. 1895, c. 8, prior to the adoption of its home rule charter. L. 1895, c. 8, § 129, which deals generally with the improvement and vacation of streets and the establishment of building lines as a part thereof, reads as follows:

"It shall have power to extend, widen, straighten, grade, drain, pave, repave, macadamize or otherwise improve any street, alley or public ground, and to lay or order laid sidewalks, curb and gutter thereon, also to establish a building line for any residence, avenue or street, and prevent the erection of buildings in front of such line, but no such line shall be established on any such street or avenue until a majority of the owners of the property affected thereby fronting on such street or avenue shall have petitioned the city council therefor."

The language of this section was substantially copied into the home rule charter and is now § 93 under c. 5, which relates generally to the powers and duties of the city council. Section 93 relates specifically to the powers and duties of the council with respect to the improvement of streets and reads as follows:

"It shall have power to extend, widen, straighten, grade, drain, pave, repave, macadamize or otherwise improve any street, alley or public ground, and to lay or order laid sidewalks, curb and gutter thereon, also to establish a building line for any residence, avenue or street, and to prevent the erection of buildings in front of such line."

On May 23, 1904, the city council adopted an ordinance establishing building lines for the street here involved and other streets and avenues. The lines so established prohibited the erection of any building nearer than 15 feet from the outer lines of the respective streets and avenues covered thereby. The ordinance contains penal

provisions for violation. The ordinance was amended on November 8, 1910, after the adoption of the home rule charter, so that the 15-foot setback lines applied to all streets and avenues then laid out and platted or which might thereafter be laid out and platted, except certain designated streets and avenues expressly excluded from the operation thereof. So far as the street here involved is concerned, the ordinance remained applicable.

Defendant contends that L. 1895, c. 8, § 129, and § 93 of the home rule charter limit the authority of the city council to the establishment of setback lines for residences and that there is no authority to establish such lines for commercial buildings; hence, that the ordinance is void as applied to defendant's bakery building.

It is clear to us that the statutory provision, as well as the comparable provision in the home rule charter, granting authority to establish setback lines, deals with and is related to the improvement of streets. The word "residence" is separated from the word "avenue" by a comma, which is here used to set off words that are independent and which are used in a series. (See, Webster's New International Dictionary [2 ed.] 1947.) The authority granted is not limited by the word "residence." The comma may be used to show an omission, and the sentence should be read the same as if the words were "establish a building line for any residence, or avenue, or street." The meaning is obvious when we continue with the section, which grants authority to "prevent the erection of buildings in front of such line." The word "buildings" here used clearly is not limited to residential buildings. In a mixed residential and business section such as we are dealing with here, it would lead to an absurd result so to construe the statutory provision or the charter provision that residences must be back 15 feet from the street line, but that commercial buildings might be erected up to the line. We cannot assume that the legislature, or the people in adopting their charter, intended such absurd result without clear language so indicating.

Defendant next contends that, inasmuch as the city of Virginia has never adopted a general zoning ordinance, it may not validly

adopt an ordinance establishing setback lines. That setback lines may be established as part of a zoning ordinance in the exercise of the city's police powers cannot now be in doubt. State ex rel. McKusick v. Houghton, 171 Minn. 231, 213 N. W. 907. We see no reason why setback lines may not be adopted in the absence of a general ordinance providing for zoning, as well as a part of such ordinance. The effect of setback lines and the purpose for which they are generally established are stated in the above case as follows (171 Minn. 235, 213 N. W. 908):

"* * * set-back lines or building lines do not really create an easement in the strict legal sense. No one acquires any right of passage or other use to the exclusion of the owner over that part of the lot upon which buildings or structures are forbidden. The effect of set-back lines and open yards and spaces in zoning ordinances is merely to regulate the use of property. It gives no beneficial use to another, except as light and air may rest undisturbed in the space where structures are prohibited. This restriction of use is based upon the exercise of the police power for the general welfare, and is not based on contract rights or the exercise of the power of eminent domain."

It is admitted that several other buildings in the block, on both sides of the street, have violated the ordinance involved. Defendant contends that it would be discriminatory now to enforce the ordinance against him. He contends also that conditions have changed since the ordinance was adopted, so that it now would be unreasonable and arbitrary to enforce the ordinance against him. Under some circumstances it has been held that an ordinance reasonable and valid when enacted may become unreasonable and invalid by subsequent change of conditions. People v. Leighton, 44 N. Y. S. (2d) 779; City of Shreveport v. Shreveport Ry. Co. (5 Cir.) 38 F. (2d) 945, 69 A. L. R. 340; Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 39 S. Ct. 172, 63 L. ed. 381. But it is not true that the failure to enforce an ordinance will effect its repeal or make it unenforceable. "* * * the validity of an ordinance is not affected

by failure to enforce it or by its wrongful enforcement or by the fact that it is repeatedly violated." 6 McQuillan, Municipal Corporations (3 ed.) § 20.09; Leigh v. City of Wichita, 148 Kan. 607, 83 P. (2d) 644, 119 A. L. R. 1503; Naughton v. Boyle, 129 Misc. 867, 223 N. Y. S. 432; Cunningham v. City of Niagara Falls, 242 App. Div. 39, 272 N. Y. S. 720; Inzerilli v. Pitney, 30 N. Y. S. (2d) 129.

The fact that other property in the neighborhood has violated the ordinance does not preclude its enforcement against defendant. People ex rel. Santora v. Kreuter, 253 App. Div. 898, 1 N. Y. S. (2d) 879; Annotation, 119 A. L. R. 1517. "No vested right to violate an ordinance may be acquired by continued violations." Acker v. Baldwin, 18 Cal. (2d) 341, 346, 115 P. (2d) 455, 458.

There have been no violations of the ordinance since plaintiffs acquired their property other than that of defendant. There have been no changes in conditions which would make enforcement now more unreasonable or undesirable than when the ordinance was first adopted, unless it may be said that past violations of the ordinance have created such changed conditions. It may be that the council heretofore has been derelict in its duties in enforcing the ordinance, and it may be also that those who have occupied part of the block have been willing to permit violation, but that does not deprive plaintiffs of the right now to seek to have the ordinance enforced when they are injuriously affected.

Defendant contends further that the violation is so trivial that injunctive relief should not be granted, but that plaintiffs should be left to their legal remedy in an action for money damages. With this we cannot agree. The houses of plaintiffs are close to the building of defendant. It is not trivial to have a concrete-block building setting some seven feet out in front of a residence in such close proximity to it. Under these circumstances, plaintiffs are not required to accept money damages, nor should they be denied equitable relief to compel compliance with an ordinance operating so clearly in their favor if enforced. We see little merit to this contention.

Neither are plaintiffs estopped from now seeking equitable relief. Defendant claims that plaintiffs should be denied a mandatory injunction because they did not proceed expeditiously in preventing the completion of his building by obtaining a restraining injunction, and that it would now cause defendant undue hardship to remove the protruding portion of his building. This is not a case where there exists a restrictive covenant in a deed, nor is it a case in which defendant has proceeded innocently without knowledge of an ordinance or covenant. Prior to building, defendant procured a permit which clearly specified that he was not to build within the forbidden area. Property owners on both sides of defendant protested to him. The building inspector for the city advised him that he could not build beyond the setback line. In his application for a permit, he stated that he would abide by the ordinances of the city. In spite of all these warnings and agreements, he proceeded to build into an area which he knew was forbidden ground. If there is any hardship caused by the enforcement of this ordinance, it has been brought about entirely by defendant's stubborn insistence upon proceeding, in violation of the ordinance, in the face of protests and warnings by everyone who had a right to protest.

The facts in this respect are quite similar to those in Newcomb v. Teske, 225 Minn. 223, 30 N. W. (2d) 354. In that case, the work of remodeling a garage so that it could be used for a residential building which would have been contrary to a zoning ordinance had been about 95 percent completed at a cost of about $4,200 when the village applied for and obtained an injunction restraining further progress of the work. In affirming the issuance of the injunction, we said (225 Minn. 227, 30 N. W. [2d] 356):

"* * * The Teskes knew that they were proceeding without a permit when they started remodeling and that in doing so they were violating the ordinance. They knowingly violated the law, and the fact that they spent money in so doing does not justify them

nor avail them of the hardship clause in the ordinance. Their situation is to be considered as if no work had been done."

In the above case, we cited with approval Welton v. 40 East Oak St. Bldg. Corp. (7 Cir.) 70 F. (2d) 377. That case is quite similar in principle to the case now before us. Even though the correction of the wrongful act there would have involved the expenditure of a very large sum of money, the court did not hesitate to grant a mandatory injunction.

Cantieny v. Boze, 209 Minn. 407, 296 N. W. 491, 173 A. L. R. 321, relied upon by defendant, is clearly distinguishable on the facts from the case now before us. That case involved the violation of a restrictive covenant in a deed, not an ordinance. The trial court found that plaintiff stood silently by and gave defendant no warning of her intention to stand on her rights. She did nothing for a period of about two years. Under these circumstances, we held that she had acquiesced in a violation of the restrictive covenant and was estopped by laches from asserting her rights after such a long lapse of time. Here, there was no acquiescence. Plaintiffs protested and did all that they could, short of commencing an action, to stop defendant from building. The administrative officials of the city did likewise. Defendant had applied for and had obtained a permit to build according to the ordinance and had agreed to abide by the ordinance. Defendant well knew that he was proceeding contrary to the city ordinance. To hold that under these circumstances he could be permitted to retain that which he had wrongfully gained by knowingly and wilfully violating a city ordinance, against the protests of those who had a right to have him abide by it, would destroy the very effectiveness of all law.

"* * * Prevention will never be accomplished by compromise after the building is erected, or through payment of a small money judgment to some individual whose financial loss is an

inconsequential item." Welton v. 40 East Oak St. Bldg. Corp. (7 Cir.) 70 F. (2d) 383.

This general principle is recognized in the Cantieny case by quoting the following from Stewart v. Finkelstone, 206 Mass. 28, 36, 92 N. E. 37, 39, 28 L. R. A. (N. S.) 634, 138 A. S. R. 370:

"* * * On the other hand one, who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts."

The court in the Stewart case said also (206 Mass. 38, 92 N. E. 40):

"* * * He [defendant] took his chances as to the effect of his conduct with eyes open to the results which might ensue. It has been the practice of courts to issue mandatory injunctions upon similar facts. * * * Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity."

Under these circumstances, injunctive relief was proper. Affirmed.