71 So.2d 814

**MOORE v. PETTUS et al.**

3 Div. 649.

Supreme Court of Alabama.

Jan. 21, 1954.

Rehearing Denied April 22, 1954.

Files Crenshaw, Montgomery, for appellant.

Hill, Hill, Stovall & Carter, Montgomery, for appellees.

LAWSON, Justice.

By virtue of the comprehensive zoning ordinance of the City of Montgomery, which became effective on November 19, 1948, the property in the 1200 block of Cleveland Avenue was placed within an area designated as a Residence B District, in which the use of property is limited in the main to dwellings and apartments, but without limitation as to number of occupants.

At the time the zoning ordinance went into effect most of the buildings situated in that block were residences owned and occupied by colored people. Many of those residences were of modern construction and design and represented substantial investments.

On the east side of the street at 1257 Cleveland Avenue was situated a frame building which had been used for several years as a store and we will sometimes hereafter refer to that building as the store building.

Although the operation of a store is not in conformity with the provisions of the zoning ordinance applicable to Residence B districts, the store building could be used after the effective date of the ordinance as a store, a permitted nonconforming use, because such use existed at the time the ordinance became effective. But under the terms of the zoning ordinance, the store building could not be extended for such nonconforming use and no improvements could be made to the store building which would make it more permanent.

Mr. L. W. Moore, a white man, went into possession of the store building as a tenant some time in 1948. It does not appear whether he went into possession prior or subsequent to the effective date of the zoning ordinance, but that fact is not material here. Mr. Moore remained in possession as a tenant until some time in 1950 when he became the owner. From the time he went into possession in 1948 until about the middle of October, 1951, the store building remained in substantially the same condition as it was when the zoning ordinance became effective. During all of that period of time Mr. Moore operated a grocery store in the front part of the building and used the back of the building as a residence. His right to so use the building during that period of time is not questioned here.

On October 15, 1951, the store building was in a very dilapidated condition. The floor was insecure because of holes and rotten boards. The roof sagged. The side walls were weak and rotten in some places. The store building was in such a bad state of repair that the end of its usefulness appeared to be near at hand.

But on Monday, October 15, 1951, work was begun on the store building, which was completed on Tuesday, October 23, 1951. The front part of the building was extended six feet to the south so as to make the front the same width as the back of the building. A new floor was put in the building and a new roof was placed not only over the enlargement or extension, but also over at least a large part of the original structure. The west (front) and south sides of the building were veneered with brick. It is not controverted that these were permanent improvements which materially prolonged the existence of the nonconforming structure.

Dr. W. D. Pettus, a colored physician and surgeon, owns the two lots immediately north of Mr. Moore's store building. On the lot adjacent to the store building lot is a frame dwelling occupied by a tenant of

Dr. Pettus. On the other lot is situated a residence in which Dr. Pettus and his wife live. Dr. Pettus purchased this property in 1935 or 1936 and has occupied it since that time. The store building now owned by Mr. Moore was in existence at the time Dr. Pettus purchased his property.

On March 24, 1952, Dr. Pettus and wife filed their bill in the circuit court of Montgomery County, in equity, against Mr. Moore averring in substance that the extension or enlargement of the store building and the permanent improvements made thereon were in direct violation of the zoning ordinance and prayed that the court "issue its writ of mandatory injunction, ordering, directing and requiring the respondent to abate or correct such violation, and to remove said extension or enlargement of said structure, and to remove the brick veneering from the front and side of said structure, and to remove the new roof installed upon said structure, and to restore in all respects said structure to the same condition as prior to said renovation, enlargement and extension;" etc.

The respondent did not interpose demurrer to the bill. After respondent filed his answer the cause came on for hearing before the trial court, who saw and heard the witnesses.

On August 13, 1952, the trial court entered a decree granting relief substantially as prayed. From that decree the respondent below has appealed to this court.

As shown above, the store building is a nonconforming structure. The extension or enlargement of that structure and the alterations and improvements made thereon constituted a violation of the terms and provisions of the zoning ordinance in the absence of a valid order of the board of adjustment consenting to a variation from the restrictions prescribed for residence B districts.

The trial court found that the board of adjustment had not issued a valid order of variance permitting Mr. Moore to do such work on his store building. We agree. The evidence in support of such finding is substantially as hereafter set out.

In the early part of September, 1951, Mr. Moore became interested in enlarging and improving his store building. He made application to the building inspector of the city of Montgomery for a building permit. the zoning ordinance provides that its terms are to be enforced by the building inspector and it is made unlawful for anyone to commence the excavation for or the construction of any building or other structure or to commence the moving, alteration or repair until the building inspector has issued for such work a building permit, including a statement that the plans, specifications, and intended use of such structure in all respects conform with the provisions of the zoning ordinance. The building inspector did not issue a permit as requested, but referred Mr. Moore to the board of adjustment.

The zoning ordinance does not purport to set out the powers of the board of adjustment, but provides that the appointment, procedure, powers and actions of the board of adjustment are governed and controlled by the provisions of § 781, Title 37, Code 1940, as it may be amended. See Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244, 247. Among the powers conferred on the board of adjustment is the following: "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." But the statute provides that there be a concurring vote of four of the five members of the board in order to effect any variation of the terms and provisions of the zoning ordinance. § 781, Title 37, Code 1940.

On September 7, 1951, Mr. Moore wrote a letter directed to the "City Planning Board," which properly came to the attention of the board of adjustment and which seems to be treated by all concerned as constituting an appeal to the board of adjustment by Mr. Moore from the action of the

building inspector refusing a building permit. The letter of September 7, 1951, reads:

"With the permission of this Board I would like to put forth an application to enlarge a grocery business now located on the East side of Cleveland Avenue.

"The existing building is now 18' facing Cleveland Avenue. It is clearing the adjacent lot on the north side by 10 feet. I own lots 3 and 4 now fronting Cleveland Avenue by 93–34 feet. With the consent of this Board I would like to extend 13 feet toward the vacant lot now owned by me. That would clear the vacant lot by 5 feet.

"The reason for the proposed addition is the present building is not large enough to carry on the present business now existing. I would like the members of the Board to note that the present building is a one story frame building which looks bad to the community. If the permit is granted I will brick the front of the existing building and repair it. This would be a great improvement to this community. Any consideration given this matter will be greatly appreciated."

The minutes of a meeting of the board of adjustment held on September 10, 1951, show that Mr. Moore's request or application as set out in his letter of September 7, 1951, was approved by the board of adjustment provided the secretary of that board "obtain agreements from the owners of adjoining residences." Such agreements could not be obtained. Dr. Pettus advised the secretary of the board in positive terms that he objected to the making of the proposed changes in the store building. And Scott Tolliver, who owned the adjoining residence to the south, testified that he did not give his consent, although offered the sum of $50 by Mr. Moore. Inasmuch as the consent of the owners of the adjoining residences could not be obtained, no building permit was issued based on the action taken by the board of adjustment on September 10, 1951.

There was a meeting of three members of the board of adjustment on October 8, 1951. Public notice of this meeting was not given nor was Dr. Pettus aware that such a meeting was to be held. See § 781, Title 37, Code 1940. The minutes of that meeting show the following:

"Nineth [sic] item on the agenda was request of Mr. L. W. Moore, 1257 Cleveland Ave., for reconsideration of application for permission to enlarge present store building at the above address. This matter was handled by the Board in September 1951, at which time the Board approved this extension of the store building to come within 5 ft. of the south property line, provided there was no objection to such extension by adjacent property owners. Mr. Knight, Secretary, made several trips to these property owners, and has been unable to contact one, however, the other, who owns the residence right next door on the north side of this store building, objects seriously to any extension of this business use. The petitioner requested a hearing on this matter at today's meeting. Petitioner was present and stated that if the Board will not pass on his first application that he would like to request that it grant permission for him to square the building even with the street, and drew a sketch of proposed plans and stated that he intended brick veneering the front of the building to improve its appearance. After considerable discussion of this matter, it was the opinion of the Board that this small extension would not cause appreciable damage to the neighborhood, and motion was made that the approval be given for an extension to the front part of the present building to a depth equal to the width of the store room on the south side provided the front of the building is brick veneered as proposed, motion seconded and carried."

On the following day, October 9, 1951, the building inspector of the city of Mont-

gomery issued a building permit to Mr. Moore, on which appears the following: "Description of work: Br. ven. bus. front & square front part of bldg. with storage room on S. side—rear—approved by Bd. of Adj. 10–8–51."

Dr. Pettus had no knowledge of the action taken by the three members of the board of adjustment on October 8, 1951, until Thursday, October 18, 1951, when he saw the building permit attached to the store building. He immediately contacted a lawyer who on the following day filed an appeal to the circuit court of Montgomery County from the order or purported order of October 8, 1951. This appeal was filed on behalf of Dr. Pettus, who had the right to appeal, and the appeal was filed timely, that is, within fifteen days. § 783, Title 37, Code 1940. See Nelson v. Donaldson, supra.

Mr. Moore admits that on the same day the appeal was taken he received a letter from Dr. Pettus wherein he was advised that the appeal had been taken and wherein the suggestion was made that he withhold any further work on the store building until the appeal was disposed of in the circuit court and wherein he was advised that any further action taken under the order of the board of adjustment would be at his peril.

But Mr. Moore disregarded this letter and continued with the work which, as previously shown, was completed for all practical purposes on the following Tuesday, October 23, 1951, long prior to the time the appeal came on to be heard in the circuit court.

The circuit court of Montgomery County on March 4, 1952, rendered a decree dismissing the appeal for the reasons set out in that part of its decree quoted below:

"The Court being of opinion that the order complained of was void, and that said order would not support the appeal because four members of the Board of Zoning Adjustment were not present, and therefore, no valid order could be made. The Court is of the opinion that the said order of variance is void. It is, therefore

"Ordered, Adjudged and Decreed by the Court that the appeal in this cause be dismissed at the cost of appellant."

No appeal was taken from the decree of March 4, 1952.

■ Although a majority of the full membership of the board of adjustment on October 8, 1951, voted to grant a variance to Mr. Moore, their action was illegal since the statute, § 781, Title 37, supra, as indicated above, requires the concurring vote of four members of the board to effect a variation in the ordinance. Gaston v. Ackerman, 6 N.J.Misc. 694, 142 A. 545; Hopkins v. MacCulloch, 35 Cal.App.2d 442, 95 P.2d 950; see Strain v. Mims, 123 Conn. 275, 193 A. 754. We construe the statute to require that the vote of the four concurring members must be recorded on the minutes of a meeting at which those members were present. Sesnovich v. Board of Appeal of Boston, 313 Mass. 393, 47 N.E.2d 943.

■■ The building inspector had no authority to issue a building permit for the extension and alteration of a nonconforming use except upon an order of the board of adjustment. Since the order of October 8, 1951, upon which the building permit was issued was illegal, it follows that the permit was also illegal. It is suggested that the permit issued by the building inspector on October 9, 1951, was valid because of the action taken by all five members of the board of adjustment on September 10, 1951. We cannot agree. The action of the full board on September 10, 1951, was conditional. The condition was not met and the mere fact that three of the members of the board appear to have subsequently waived the condition does not authorize the assumption that one or both of the remaining members waived the condition. In any event, there is no record before us indicating that at any time an unconditional order of variance was granted by the concurring vote of four members of the board of adjustment.

It is contended that the decree appealed from is erroneous for the reason that the

complainants failed both in averment and proof to show that they were entitled to the relief for which they prayed.

We have recognized the right of the municipalities of this state, under the terms of § 782, Title 37, Code 1940, to employ injunction to prevent violation of a zoning ordinance. Rose v. City of Andalusia, 249 Ala. 333, 31 So.2d 66; Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468.

But in so far as our research discloses, we have not considered the question of whether a private citizen, apart from any aid rendered by municipal enforcement officials, can seek and be granted an injunction against the violation of a zoning ordinance.

No such right is attempted to be conferred on a private citizen by § 782, Title 37, supra. However, § 176 of the Montgomery Zoning Ordinance does purport to confer such power on an adjacent or neighboring property owner who can show special damages as a result of the violation. But such right or power as is thus granted is merely cumulative of that already possessed by a property owner. Crump et ux. v. Perryman., Tex.Civ.App., 193 S.W.2d 233.

■ The question has arisen in many states and the general rule is to the effect that a court of equity has jurisdiction to enjoin the violation of a zoning ordinance at the instance of a private citizen who shows special damage by way of impairment of value or otherwise. Smith v. Collison, 119 Cal.App. 180, 6 P.2d 277; Fitzgerald v. Merard Holding Co., 106 Conn. 475, 138 A. 483, 54 A.L.R. 361; Anderson Lumber & Supply Co. v. Fletcher, 228 Ind. 383, 89 N.E.2d 449; Zimmerman v. O'Meara, 215 Iowa 1140, 245 N.W. 715; Rabalais v. Hillary Builders, La.App., 62 So.2d 846; Cassel v. Mayor & City Council of Baltimore, 195 Md. 348, 73 A.2d 486; Newcomb v. Teske, 225 Minn. 223, 30 N.W. 2d 354; Evans v. Roth, 356 Mo. 237, 201 S.W.2d 357; City of Omaha v. Glissmann, 151 Neb. 895, 39 N.W.2d 828; Garrou v. Teaneck Tryon Co., 11 N.J. 294, 94 A.2d 332; Marcus v. Village of Mamaroneck, 283 N.Y. 325, 28 N.E.2d 856; Harrington &

Co. v. Renner, 236 N.C. 321, 72 S.E.2d 838; Pritz v. Messer, 112 Ohio St. 628, 149 N.E. 130; Phillips v. Griffiths, 366 Pa. 468, 77 A.2d 375; R. I. Home Builders, Inc., v. Budlong Rose Co., 77 R. I. 147, 74 A.2d 237; Momeier v. John McAlister, Inc., 203 S.C. 353, 27 S.E.2d 504; City of Knoxville v. Peters, 183 Tenn. 93, 191 S.W.2d 164; Crump v. Perryman, Tex.Civ.App., 193 S.W.2d 233; Park v. Stolzheise, 24 Wash. 2d 781, 167 P.2d 412; Holzbauer v. Ritter, 184 Wis. 35, 198 N.W. 852. See Eger v. Illinois Protestant Children's Home, Inc., 334 Ill.App. 81, 78 N.E.2d 346; Howard v. Mahoney, 188 Okl. 89, 106 P.2d 267; Knight v. City of Riverton, Wyo., 259 P.2d 748; Zoning Law and Practice, Yokley, (2d Ed.), Vol. 1, p. 262, Vol. 2, pp. 7–12. The rule in Georgia and Kentucky appears to entitle individual property owners residing in zoned area where violation occurs to enjoin violation even though substantial financial loss is not shown. See Snow v. Johnston, 197 Ga. 146, 28 S.E.2d 270; Parker v. Rash, 314 Ky. 609, 236 S.W.2d 687.

■■ In the bill of complaint we find the general averment of special damage to the complainants resulting from the extension and alterations made by respondent to his nonconforming structure in violation of the zoning ordinance. It appears from the averments of the bill that the property of complainants and that of the respondent adjoin. But there are no other specifications of facts from which the conclusion of special damage is drawn. Although the statements of the present bill might have been insufficient on demurrer, see Fitzgerald v. Merard Holding Co., 106 Conn. 475, 138 A. 483, yet it was competent for the respondent to accept them as averments of fact and in the absence of objection by demurrer they will support the equity of the bill. Louisville & N. R. Co. v. City of Bessemer, 108 Ala. 238, 18 So. 880.

■■ The finding of the trial court that complainants suffered a special damage sufficient to maintain this suit is supported by the evidence. Before the examination of witnesses began counsel who represented the respondent in the trial below, but not on this appeal, agreed that the location of the

store, its enlargement, extension and alteration had materially depreciated the value of complainants' property. Several photographs were introduced in evidence which showed the character of the neighborhood and which no doubt shed light on the question of the damage or injury to complainants' property resulting from the respondent's conduct. Those photographs have not been included in the record sent to us on appeal nor have they been certified to us. Under our well established rule we cannot disturb a finding of fact by a trial court where there was evidence before the trial court which may have influenced it in arriving at its finding of fact and which is not before us. Dancy v. Ratliff, 201 Ala. 162, 77 So. 688; Jones v. Jefferson County, 203 Ala. 137, 82 So. 167.

■ The building permit which was issued to Mr. Moore was invalid, hence he acquired no vested rights thereunder although he has incurred expense in connection with the extension to and improvement of his store building. Hyams v. Amchir, Sup., 57 N.Y.S.2d 77; Marcus v. Village of Mamaroneck, 283 N.Y. 325, 28 N.E.2d 856; Adler v. Department of Parks etc., 20 N.J.Super. 240, 89 A.2d 704; Zoning Law and Practice, Yokley (2nd Ed.) Vol. 1, p. 236, § 101. In Zahodiakin Engineering Corp. v. Zoning Board of Adjustment of City of Summit, 8 N.J. 386, 86 A.2d 127, 132, a variance or exception from a zoning ordinance was granted by a board of adjustment which was beyond its power and the problem presented here was dealt with by the Supreme Court of New Jersey as follows:

"Thus, for want of jurisdiction of the subject matter, the resolution purporting to authorize the exception was utterly void and subject to collateral attack at any time as well as a direct review within the time prescribed by law. It is a corollary to this that the expenditure of moneys to render the lands suitable for the prohibited use does not operate to validate the void grant. The want of fundamental power cannot be indirectly supplied by the application of the doctrine of estoppel *in pais*. The elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril."

■ It is argued in brief for appellant, respondent below, that complainants were guilty of laches and therefore not entitled to equitable relief in the form of a mandatory injunction. The time which intervened between October 23, 1951, the day on which the work on the store building was completed, and March 24, 1952, the day on which this suit was filed, has no bearing on this question. On the day this suit was instituted respondent was in the same condition in regard to his store building as he was on October 23, 1951. Laches is not mere delay, but such delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly so long as he acts within the limits allowed by law. Taunton v. Trammell, 254 Ala. 252, 48 So.2d 190.

■ It is suggested that complainants are guilty of laches because they did not apply for an injunction as soon as they became aware of the fact that work was being done on the building, As shown above, complainants took action as soon as they saw work being done on the building. An appeal was filed to the circuit court as provided by statute and the respondent was immediately notified of that appeal and the suggestion was made to him that he refrain from further work on the store building until his right to carry on the work was finally determined by the courts. Having followed the procedure prescribed by law, complainants were under no duty to apply at that time to a court of equity for injunctive relief. Welton v. 40 E. Oak St. Bldg. Corp., 7 Cir., 70 F.2d 377. The respondent acquired no vested right to act under the permission originally granted by virtue of the fact that no restraining order was obtained

pending the appeal to the circuit court from the purported order of October 8, 1951. Torello v. Board of Zoning Appeals of New Haven, 127 Conn. 307, 16 A.2d 591. See Bouchard v. Zetley, 196 Wis. 635, 220 N.W. 209.

There is no merit in the argument that complainants waited four or five days after they learned of the work going on before taking any action. Dr. Pettus testified that he knew nothing about the work until Thursday, October 18, 1951, the day on which he consulted counsel and the day before the appeal was filed. There is no evidence to the contrary. The mere fact that a ditch was dug in front of the store building into which concrete was poured on Tuesday, October 16, and that some work was done on the south side of the building on that day is not sufficient to charge him with notice.

Counsel who represent respondent on this appeal cast him in the role of an innocent man who has been caused, by the decree of the circuit court from which the appeal is taken, to suffer a considerable loss merely because he acted under a permit issued by the city building inspector. As we read the record, the respondent did not act innocently but acted in such a manner as to invite trouble. In the first place, the work which he had done on the store building went far beyond the permit issued to him. The permit merely purported to authorize him to make the front of the building as wide as the rear and to veneer the front with brick. But respondent put brick veneer on the south side of the building as well as the front. He put a new floor in the old structure and placed a new roof over a part of the old structure. As heretofore indicated, respondent was promptly notified of his proposed violation of the ordinance and to desist from such violation. At the time he was so notified only a small part of the work had been done. Nevertheless respondent deliberately chose to ignore the notice and to proceed with the work. Respondent was told on Saturday, October 20, the day after he received the notice, that the appeal might affect his right to proceed with the work and was advised to make inquiry. He ignored this advice

and the evidence leads to no other reasonable conclusion but that the notice of appeal prompted respondent to speed up the work. He employed several more laborers who worked day and night. Bouchard v. Zetley, supra.

There is a suggestion made that complainants could have been compensated by a money judgment instead of putting the respondent to great loss, and that in equity this should have been done. In cases of this kind it is usually held that money damages are not sufficient to compensate an injury suffered due to the kind of violation here involved. Newcomb v. Teske, 225 Minn. 223, 30 N.W.2d 354; Bouchard v. Zetley, supra; Welton v. 40 E. Oak St. Bldg. Corp., supra; McCavic v. DeLuca, 233 Minn. 372, 46 N.W.2d 873. We think this is such a case. This is not a case where there exists a restrictive covenant in a deed, nor is it a case in which defendant has proceeded innocently without knowledge of an ordinance or covenant. See McCavic v. DeLuca, supra.

We recognize the fact that it does not necessarily follow in every case, even though the right may be clear, that the complainant is entitled to a mandatory injunction. The courts consider the equities between the parties and, in some cases where a great injury will be done to the respondent, with very little if any to the complainant, will deny equitable relief. Where there has been an innocent mistake or a bona fide claim of right on the part of the respondent, or inexcusable or unconscionable delay on the part of the complainant, or where the conduct of the respondent was not wilful and inexcusable, courts in some cases have held it to be inequitable to grant a mandatory injunction. Hollingsworth v. Szczesiak, Del.Ch., 84 A.2d 816. But in the present case the respondent, in our opinion, is not entitled to such consideration. Respondent took his chances with his eyes open to the results which might ensue. He is not in a position to justifiably complain if such conduct has resulted in serious damage to him. Moreover, the public is interested in the enforcement of the zoning ordinances, as well as the owners of property

specially affected. There is involved that vital element of respect for and compliance with the zoning ordinances of the city. The surest way to stop such violations is to remove all possibility of gain to those who build illegally. Prevention cannot be achieved by compromise after the illegal construction work is completed or through payment of a small money judgment. See Welton v. 40 E. Oak St. Bldg. Corp., supra; Bouchard v. Zetley, supra.

There was no testimony offered by respondent tending to show that at the time the decree of the trial court was rendered respondent had pending another application before the board of adjustment for a variance and we do not understand that appellant contends that the manner in which the cause was submitted for final decree made the averments of the answer serve as evidence.

■ It is contended that the original application for a variance was still pending, in view of the fact that it had never been acted on legally. Conceding, without deciding, that such is the case, we do not think the trial court should have refrained from entering its decree on the theory that the board of adjustment might act favorably on that application, for the reason that it is apparent from this record that the board could not enter a valid order of variance permitting the respondent to make extensions or enlargements to and permanent improvements on his nonconforming structure.

■ The intention of zoning laws as regards a use of nonconforming property is to restrict rather than extend it. Fulford v. Board of Zoning of City of Dothan, 256 Ala. 336, 54 So.2d 580. The objective is the gradual elimination of the nonconforming use by obsolescence or destruction by fire or the elements. Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement. San Diego County v. McClurken, 37 Cal.2d 683, 234 P.2d 972, and cases cited there. The whole purpose and spirit of the zoning ordinance would be defeated if an owner is permitted to substitute permanent brick walls for rotted exterior walls, put in new flooring in place of rotted flooring, put on a new roof and build a new addition, as this would extend or prolong indefinitely the life of the nonconforming building. Selligman v. Von Allman Bros., 297 Ky. 121, 179 S.W.2d 207. What is here said in nowise conflicts with our opinion in Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244. There the property had been purchased and certain work started before the zoning ordinance was passed. Here the property was purchased after the zoning ordinance was passed. The respondent would not be entitled to a variance on a showing that unless it is granted he will not be able to carry on his business in a profitable way. The lot on which the nonconforming structure is situated is suitable for residential purposes. The fact that respondent might not care to build a residence thereon is immaterial. He knew there was a zoning ordinance in the city of Montgomery when he purchased the property.

In Bromberg v. Eugenotto Const. Co., 158 Ala. 323, 48 So. 60, 19 L.R.A.,N.S., 1175, this court held that a mandatory injunction would not lie to enforce a contract to lease floor space in a building being erected where its enforcement would necessitate the exercise of skill and discretion in reconstructing the building, it not being feasible for the court to supervise the work over an extended period of time. That holding has no application here. It requires no supervision of the court for the respondent to remove the improvements and additions which he has made. He made them without the court's supervision and he can remove them. In decreeing that the respondent restore the property to the condition in which it was prior to the time the work was done it was, of course, not contemplated that the same old building materials be used. The decree looks to the respondent to restore the building to the same size and state of repair as it was prior to the time the work was done on it in October, 1951. To say that the decree is erroneous under our holding in the Bromberg case, supra, would be to say that an equity court is without power to order the issuance of a mandatory injunction requiring the tearing down of a building under any conditions. Of course, such is not the law.

628

During his direct examination Dr. Pettus was shown a picture by his counsel which he identified as being that of the home of one B. W. Fitts. Counsel for Dr. Pettus then propounded to him the following question: "Is this in the next block?" The witness answered, "Yes, sir." Thereupon counsel for respondent stated: "We are going to object to that." The objection was overruled and exception was noted. Reversible error is not made to appear in this ruling of the court. Aside from the fact that the objection was general and came after the question was answered, the question merely called for a statement as to the location of Fitts' home. The answer was responsive. The question did not call for nor did the answer thereto bear on the type of house owned by Fitts or the nature of its occupancy. Moreover, the appellant here, respondent below, would not be in a position to complain even if Dr. Pettus had given testimony as to the type of home owned by Fitts and the nature of its occupancy, for the record shows that it was respondent, not the complainant, who introduced in evidence the picture of Fitts' home. In disposing of this question as we have, we do not want to be understood as holding that it would have been error for the trial court to have permitted the complainant to show the type and character of building situated in neighboring blocks within the same zoning district. That question is not before us.

The trial court gave the respondent forty-five days from the date on which the decree was entered to comply with its mandate. That period of time has long since expired due to this appeal.

The decree appealed from will be affirmed and the cause will be remanded in order that the trial court may fix such time as it deems reasonable within which the respondent is to comply with the terms of the decree. See McLellan v. McLellan, 220 Ala. 376, 125 So. 225.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.