MADDOX, Retired Justice.
This appeal involves a dispute between a municipal board of adjustment and a company that owns advertising billboard structures; the question presented is whether changes the company made in two of its billboards violated a municipal zoning ordinance that prohibited changes that prolonged or enhanced the useful life of the billboard or that increased its size, shape, location, angle, or height. Based on the record before us, we conclude that, as a matter of law, the changes the company made in the billboards violated the ordinance; therefore, we reverse and remand.
H & S Southern Graphics Systems, Inc. (“Southern Graphics”), a company that owns advertising billboard structures, appealed from a decision of the City of Foley Board of Adjustments and Appeals (“the Board”) holding that changes Southern Graphics had made in two of its billboards located along the Foley Beach Express, a toll road in Baldwin County, violated an ordinance of the City of Foley.[1]
The case was tried before a jury, and at the close of Southern Graphics’ case-in-chief, the Board moved for a judgment as a matter of law; it renewed the motion at the close of all the evidence. The trial *296 court denied both motions. The jury returned a verdict for Southern Graphics, and the trial court entered a judgment on that verdict. The Board appealed. We reverse and remand.

Facts

In 2000, Southern Graphics applied for and received sign permits and building permits from the City of Foley to construct two “double stack” billboards along the Foley Beach Express. Each permit allowed Southern Graphics to erect a billboard consisting of two 10 1/2-foot by 36-foot stacked sign faces, that is, one on top of the other, in each direction of travel. Southern Graphics’ application for the permits and its engineering plans stated that the billboards would contain a total of 756 square feet of advertising space in each direction of travel. The stacked signs were designed to be, and were originally constructed to be, separated by a four-foot gap, and each of the two sign faces had lights, a catwalk, and an apron attached to the bottom. Both permits were issued on March 27, 2000, and construction of the billboards began soon thereafter.
On July 3, 2000, the City of Foley passed a zoning ordinance that specifically addressed outdoor advertising along the Foley Beach Express. The two billboards Southern Graphics had been issued permits for violated the provisions of the new ordinance because they were located within 660 feet of the Foley Beach Express and they were visible from the Foley Beach Express. The ordinance, however, “grandfathered in” existing billboard structures as legal nonconforming signs and they were allowed .to remain, but with certain restrictions. Some of those restrictions read, as follows:
“(B) A legal nonconforming billboard may not be:
“(1) Structurally altered, amended or repaired so as to prolong or enhance the useful life of the billboard;
“(2) Altered, changed or moved in any manner that increases its size, shape, location, angle, or height .... ”
(Emphasis added.)
On February 22, 2001, the City of Foley received a complaint that work was being performed on several of Southern Graphics’ billboards on the Foley Beach Express. Southern Graphics had not applied for or obtained a building or sign permit to do work on the billboards. Consequently, the zoning administrator and building inspector for the City of Foley, Chuck Lay, met with Robert Griffin of Southern Graphics to advise him to stop work on the billboards. Despite being told that he could not alter the signs without a building permit and despite being told that the intended changes to the signs violated the zoning ordinance, Southern Graphics proceeded to make changes to the two billboard structures. The changes included removing the lights, apron, and catwalk that serviced the top sign of the stacked sign and filling in the four-foot gap between the two signs to join the two sign faces into one larger sign face.
In making these changes, Southern Graphics increased the total square footage of the sign face on the stacked signs from 756 square feet to 900 square feet. By making these changes, Southern Graphics also changed the shape of the sign from two 10 1/2-foot by 36-foot signs to one 25-foot by 36-foot sign.
The zoning administrator determined that the changes to the billboards violated the ordinance. Southern Graphics then appealed that determination to the Board and requested a variance; the Board found that the changes Southern Graphics had made to the billboard structures violated the ordinance and denied Southern Graph *297 ics’ request for a variance on September 12, 2001. Southern Graphics then appealed the Board’s decision to the Baldwin Circuit Court, and a jury found that it had not violated the provisions of the ordinance. The trial judge entered a judgment based on the jury verdict. The Board appealed.
Many of the above-stated facts are undisputed, and Southern Graphics states in its brief that it “is satisfied with the Statement of the Facts set forth by the Board” in its brief to this Court, except that Southern Graphics “objects to the Board’s statement as fact that ‘[ojbsolescence is a factor in determining the “useful life” of a structure under this ordinance.’ ” (Southern Graphics’ brief, pp. 1-2.) Southern Graphics says that the ordinance does not define or refer to “obsolescence” and does not define “useful life,” “[n]or does it set forth any factors to be used to determine ‘useful life.’ ” (Southern Graphics’ brief, p. 2.) Southern Graphics also “objects to the Board’s statement [in its brief,] as fact that Southern Graphics made these changes to their billboards in an attempt to help market the signs and make them more attractive to companies interested in advertising on billboards.”[2] (Southern Graphics’ brief, p. 2.)

Standard of Review

In view of the fact that the parties substantially agree as to all of the facts that are pertinent to determining whether the billboards violated the provisions of the ordinance, our standard of review is de novo. See Ex parte Norwood, 615 So.2d 1210, 1212 (Ala.Civ.App.1992) (“‘[construction of a zoning ordinance is a question of law1 ”); see also Civitans Care, Inc. v. Board of Adjustment of Huntsville, 437 So.2d 540 (Ala.Civ.App.1983); and Burnham v. City of Mobile, 277 Ala. 659, 174 So.2d 301 (1965).
Although this case was heard by a jury and although the law provides that a jury’s findings of fact are presumed correct, that presumption has no application when the trial court has been shown to have improperly applied the law to the facts. Cf. Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992), and Smith v. Style Adver., Inc., 470 So.2d 1194 (Ala.1985). See also Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994); Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538 (Ala.1988); First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987); Barrett v. Odom, May & DeBuys, 453 So.2d 729 (Ala.1984).

Discussion

With the above-stated standard of review firmly in mind, and because this appeal involves the interpretation of a municipal zoning ordinance, we begin our opinion by stating some general principles of law that this Court recently set forth in Ex parte Lamar Advertising Co., 849 So.2d 928 (Ala.2002). This Court stated:
“This Court recognizes ‘that a municipality may establish a comprehensive land-use plan and effectuate that plan through a scheme of comprehensive zoning regulations.’ Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 158 (Ala.2000). However, a city ordinance is subject to the same general rules of construction as is an act of the Legislature, S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905 (Ala. *298 1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala.1988), this Court, quoting Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala. 1987), set out the following general rule of statutory construction, which applies to the construction of a municipal ordinance:
“ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978).” ’
“In Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala.1999), this Court stated:
“ ‘ “When the language of a statute is plain and unambiguous, ... courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.” Ex parte T.B., 698 So.2d 127, 130 (Ala.1997). Justice Houston wrote the following for this Court in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998):
“ ‘ “In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ““ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ”” ”
849 So.2d at 930. In Moore v. Pettus, 260 Ala. 616, 71 So.2d 814 (1954), this Court stated:
“The intention of zoning laws as regards a use of nonconforming property is to restrict rather than extend it. Fulford v. Board of Zoning of City of Dothan, 256 Ala. 336, 54 So.2d 580 [(1951)]. The objective is the gradual elimination of the nonconforming use by obsolescence or destruction by fire or the elements. Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement. San Diego County v. McClurken, 37 Cal.2d 683, 234 P.2d 972 [(1951)], and cases cited there. The whole purpose and spirit of the zoning ordinance would be defeated if an owner is permitted to substitute permanent brick walls for rotted exterior walls, put in new flooring in place of rotted flooring, put on a new roof and build a new addition, as this would extend or prolong indefinitely the life of the nonconforming building. Selligman v. Von Allm[e]n Bros., 297 Ky. 121, 179 S.W.2d 207 [(1944)].”
260 Ala. at 627, 71 So.2d at 824-25 (emphasis added). As stated above, the ordinance in this case, which permitted a nonconforming use, nevertheless contained the following restrictions:
“(B) A legal nonconforming billboard may not be:
“(1) Structurally altered, amended or repaired so as to prolong or enhance the useful life of the billboard;
*299 “(2) Altered, changed or moved in any manner that increases its size, shape, location, angle, or height....”
The Board argues that although Southern Graphics’ billboard structures were “grandfathered in” under the ordinance as it existed before the new ordinance was enacted and were therefore “legal nonconforming billboard[s],” Southern Graphics structurally altered the billboards to enhance their useful life in violation of the zoning ordinance. We need not decide that issue, because it is clear that the changes Southern Graphics made to the billboard structures violate the restriction in the ordinance that a sign could not be “[a]ltered, changed or moved in any manner that increases its size, shape, location, angle, or height.” It is quite obvious that the signs were altered or changed to increase their size. That was not true in Lamar Advertising. As stated in footnote one of that opinion, the newly installed trivision sign did not change the square footage of advertising displayed. That is not true in this case. Here, it is undisputed that Southern Graphics changed its billboards so that the total advertising space was increased by 144 square feet — from 756 square feet to 900 square feet in each direction of travel. As stated above, Southern Graphics’ application and engineering plans stated that the billboards would contain a total of 756 square feet of advertising space in each direction of travel.
The judgment of the trial court, holding that Southern Graphics’ alteration of its billboards did not violate the new zoning ordinance, is reversed and the case remanded for proceedings consistent with this opinion.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, HARWOOD, and STUART, JJ., concur.

. Although Southern Graphics' notice of appeal from the decision of the Board referred to the Board’s denial of its request for a variance, this issue was not litigated. The case was tried only on the issue of the Board’s determination that an improper change in the existing billboards had been made in violation of the ordinance. In fact, Southern Graphics did not challenge the validity of the zoning ordinance, but merely challenged whether its actions were prohibited by the terms of the ordinance.

. This objection appears to lack merit in view of the testimony of Griffin that Southern Graphics "thought it would be good to incorporate one ad on the double sign as opposed to two,” and that “[f]rom a sales standpoint, it's easier to sell one ad than two ads.” Griffin further testified that Southern Graphics "wanted to try [the changes] on a couple of them to see what sort of response we got from the advertising community.”