PAUL STEENBERG v. THEODORE KAYSEN, JR., AND ANOTHER, EXECUTORS OF ESTATE OF JOHN H. ANDERSON, AND OTHERS.[1]

August 5, 1949.

No. 34,813.

---

[1]Reported in 39 N. W. (2d) 18.

Guesmer, Carson & MacGregor, for appellants.

Briggs, Gilbert, Morton, Kyle & MacCartney and Guy W. Kimball, for respondent.

KNUTSON, JUSTICE.

On November 2, 1936, Paul Steenberg Construction Company, a Minnesota corporation, was the owner of certain industrial property in the city of St. Paul and certain machinery, tools, and equipment located in the building on the real estate. On that date, the Steenberg company entered into a contract with one John H. Anderson under which it sold and agreed to convey the real and personal property to Anderson for the sum of $45,000, with interest on the unpaid balance at the rate of six percent per annum, principal and interest to be payable in monthly installments. Anderson made certain payments on the contract, but the payments were not sufficient to pay the accrued interest. On June 14, 1939, the principal sum of $45,000 was still due, together with a part of the accrued interest. On that date, Anderson, realizing that he would be unable to make good on the contract he then had, wrote a letter to the Steenberg company offering two alternatives, one that he give up possession and turn the property back to the company, and the other that the company cancel the old agreement and enter into a new arrangement. The new arrangement, as stated in Anderson's letter, was as follows:

"The property to be deeded to me on delivery of 25 Notes amounting to $42,675.00

"A sample of the first note and a sample of the last note are hereto attached."

These notes read as follows:

"St. Paul, Minn.

"No. 1                                            $1239.00

"On or before                    For value received I promise to pay Paul Steenberg Construction Co. in twelve monthly instalments as specified on the back of this note. The sum of Twelve hundred thirty nine Dollars. $1239.00 with interest at the rate of 6% per annum after maturity. If any payments are made before maturity a discount at the rate of 6% per annum is to be allowed.

"John H. Anderson"

"No. 25.                                   St. Paul, Minn.

"No. 25                                          $2175.00

"On or before                    For value received I promise to pay Paul Steenberg Construction Co. in twelve monthly instalments as specified on the back of this note. The sum of Twenty one hundred seventy five Dollars $2175.00 with interest at the rate of 6% per annum after maturity. If any payments are made before maturity a discount at the rate of 6% per annum is to be allowed."

On the back of each note appears a list of the monthly payments. The first note was to be paid in equal monthly installments, each in the sum of $103.25, and the last note in monthly installments of $181.25. Thereafter followed a list of the intervening notes, showing the amount of each. The letter then continued as follows:

"The 25 notes to be secured by mortgage on the property.

\*     \*     \*     \*     \*

"The real estate and the personal property [taxes] to be paid by you up to the time that the deed is recorded. After that the taxes are to be paid by me."

This plan was agreed to by the Steenberg company, whereupon Anderson caused the 25 notes to be prepared in printed form, and a deed to the property, together with a mortgage securing the indebtedness, was likewise prepared and executed. The discount provisions in the printed notes vary slightly from those in the copy attached to Anderson's original letter. The printed note No. 1 reads as follows:

"$1239.00                                                    No. 1
          "St. Paul, Minnesota, October 1, 1939
"For value received, I promise to pay to the order of
                PAUL STEENBERG CONSTRUCTION COMPANY
"The Sum of Twelve hundred thirty nine & 00/100 Dollars
In monthly installments of One hundred three & 25/100 Dollars
Each on the last day of each month, beginning with the last day of October 1939, with interest after the due date on each instalment until paid at six [6%] per cent per annum. The maker of this note has the privilege of paying the whole or any part of this note before the due date of either or any instalment and shall receive a credit equal to interest at the rate of six [6%] per cent per annum from the time of payment to the due date on all payments made before the due date.
                                        "John H. Anderson"
Each of the other printed notes reads exactly the same, except that the amounts differ.

The mortgage given to secure the indebtedness contains these provisions:

"* * * That the said mortgagors, in consideration of the sum of Thirty Thousand ($30,000.00) Dollars, to them in hand paid by the said Mortgagee, the receipt whereof is hereby acknowledged, do hereby Grant, Bargain, Sell, and Convey unto the said Mortgagee," the property involved herein.

It then further provides:

"* * * That if the said mortgagor J. H. Anderson, his heirs, administrators, executors or assigns, shall pay to the said mort-

gagee, its successors or assigns, the sum of Thirty Thousand ($30,-000.00) Dollars, according to the terms of twenty-five principal promissory notes of even date herewith due and payable, with interest thereon at the rate of six per cent per annum, as follows, to-wit: $1200.00 of said $30,000.00 principal, together with interest on said $1200.00 at 6% per annum from date is payable in twelve equal monthly instalments each year from the date hereof until 25 such principal payments of $1200.00 each are paid, which notes are executed by the said mortgagor John H. Anderson, and payable to said mortgagee, at its office in St. Paul, Minnesota," etc.

On October 18, 1939, Anderson wrote the Steenberg company as follows:

"Referring to the 'New Deal' of October 1st, 1939, for the property at 473 North Cleveland Avenue, St. Paul, Minnesota, by which the agreement of November 2, 1936 is cancelled, and the new deal of October 1st, 1939 is in effect.

"The understanding between us is that when I have reduced the purchase price of $30,000.00 to $28,000.00, you will then at that time give me a bill of sale to the machine equipment and that you will now give me a warrenty [sic] deed to the Real Estate (Lots and Buildings). It is understood that you pay the first half and I pay the second half of taxes due in 1940."

In answer to this letter, the Steenberg company wrote Anderson on October 23, 1939, the pertinent portion of which letter is as follows:

"In consideration of your having accepted a warranty deed from us to the real estate at the above described address and your having executed to us your notes secured by a mortgage on said real estate in the sum of Thirty Thousand ($30,000.) Dollars, which represents the purchase price due us from you for said real estate and the machine equipment now situated upon said premises, we agree that when you have paid Two Thousand ($2,000.) Dollars on the principal of said purchase price together with interest due to that date,

we will then give you a bill of sale to said machine equipment and that in the meantime you shall have the possession of and right to use said machine equipment, * * *."

Thereafter, a bill of sale was given to Anderson covering the machinery. Certain portions of the machinery were sold from time to time, and the proceeds thereof were applied toward the reduction of the debt. In so doing, Anderson computed discounts on the notes and applied the proceeds of such sales toward the discharge of the last notes.

On December 30, 1940, the mortgage in question was assigned by the Paul Steenberg Construction Company to Paul Steenberg, the plaintiff herein.

Anderson died August 27, 1941, and the executors of his estate continued with the contract.

On August 31, 1946, the executors of Anderson's estate tendered a check for $4,389.73, representing the same to be the balance due on the contract, and enclosed a form of satisfaction of mortgage, which they requested Steenberg to sign and return. Up to that time, Anderson and the executors of his estate had made payments aggregating $20,480.29. Upon receipt of the above check, Steenberg objected to accepting the same, contending that there was much more due. Correspondence followed between the parties, and both recomputed the amount which had been paid and the amount which they claimed to be due. On April 16, 1947, Steenberg, through his attorney, wrote the Anderson estate claiming that there was due $8,412.34. At that time, notes Nos. 8 to 13, inclusive, remained in the hands of Steenberg. The other notes had been returned to Anderson or to his representatives and had been marked paid in full or in some other manner cancelled. In his letter of April 16, Steenberg's attorney declared that a default had been made in the installments due on note No. 8 and that he elected to declare the amount of notes Nos. 8 to 13 due and payable, and he made a demand for the sum of $8,412.34.

Subsequent to the receipt of that letter, both parties proceeded to have the account audited. The Anderson estate then came to

the conclusion that the entire debt had been paid and that they had overpaid the amount due and were entitled to a return of $345. Steenberg came to the conclusion that there was much more due than he had computed and had demanded in his letter of April 16, 1947.

This action followed to determine the amount due and to foreclose the mortgage securing the indebtedness. Defendants answered and interposed a counterclaim wherein they deny that anything is due and allege:

"Said mortgage by the mutual mistake of the parties describes the principal indebtedness as thirty thousand ($30,000) dollars instead of forty-two thousand six hundred and seventy-five ($42,675) dollars, and mistakenly described the twenty-five (25) principal promissory notes of October 1, 1939, as drawing interest at the rate of six per cent (6%) per annum from date, instead of after the due date of each installment until paid."

As affirmative relief, defendants demand that plaintiff take nothing and that they recover of plaintiff the sum of $345, which they claim to have overpaid on the indebtedness, and they also demand that notes Nos. 8 to 13, inclusive, be delivered up and cancelled and that the mortgage be satisfied of record.

The trial court found in favor of plaintiff and against defendants, and, the court having denied a motion for amended findings or for a new trial, the matter comes here on appeal by defendants.

■ Principally, it is the contention of plaintiff that in preparing and drafting the notes involved a mistake was made in computing the amount of interest that was added to each note and that the discount provision was intended to apply only to unpaid interest and not to the principal of the note. Defendants contend that the notes should be interpreted literally as they read and that the mistake was made in the mortgage and not in the notes. The trial court found that in drafting the notes Anderson failed properly to compute the interest that was added to the principal of each note, and proceeded to determine the amount due had the notes been drawn

properly and had they conformed to the mortgage. The court found that there was $20,841.25, with interest thereon at the rate of six percent per annum from May 1, 1947, still unpaid on the indebtedness, and ordered judgment to be entered against defendants in that amount and that the mortgage be foreclosed.

Defendants challenge the sufficiency of the evidence to sustain the court's finding in this respect.

At the outset, it is evident that a mistake was made in either the notes or the mortgage. It can hardly be doubted that the evidence sustains the court's finding that the parties contracted on the basis of $30,000 as the principal amount. The mortgage so states. Anderson's letter of October 18, 1939, written only a few days after the agreement was entered into, states unequivocally:

"The understanding between us is that when I have reduced *the purchase price of $30,000.00* to $28,000.00, you will then at that time give me a bill of sale to the machine equipment * * *." (Italics supplied.)

In answer to that letter, the Steenberg company said in its letter of October 23, 1939:

"In consideration of your having accepted a warranty deed from us to the real estate at the above described address and your having executed to us your notes secured by a mortgage on said real estate in the sum of Thirty Thousand ($30,000.) Dollars, *which represents the purchase price due us from you for said real estate and the machine equipment now situated upon said premises,* * * *." (Italics supplied.)

Twenty-five notes in the principal sum of $1,200 each total $30,000. Interest on the first note was computed properly and correctly at the rate of six percent per annum.[2] It is evident that when in-

---

[2] $100 due October 31, 1939, one month at six percent, $0.50;
$100 due November 30, 1939, two months at six percent, $1;
$100 due December 31, 1939, three months at six percent, $1.50;
$100 due January 31, 1940, four months at six percent, $2;
$100 due February 29, 1940, five months at six percent, $2.50;

terest on the second and subsequent notes was computed the sum of $39 per year was simply multiplied. Interest at six percent per annum would have amounted to $72 per year for each year except the year during which installments were being paid. It is hardly conceivable that the parties would have intended to contract on the basis of six percent interest on the first note and some other rate of interest on the balance of the notes. For instance, to the second note was added $78. That would be $39 for the year of payment, which would constitute six percent the same as the first note. But for the preceding year $39 would amount to 3.25 percent. It is evident that the parties intended the discount to apply to interest and not to principal and that it would offset the interest that had been added to the principal, so that the final result would be that interest would be paid only to the date when the prepayment privilege was exercised. A careful reading of the discount provision of the note can lead to no other conclusion. It reads:

"* * * The maker of this note has the privilege of paying the whole or any part of this note before the due date of either or any instalment and shall receive a credit *equal to interest* at the rate of six [6%] per cent per annum from the time of payment to the due date on all payments made before the due date." (Italics supplied.)

Defendants' contention respecting the construction that should be placed upon this discount provision as applied to the notes as drawn would lead to an absurd result. It would mean that notes Nos. 18 to 25 could have been discharged on the day they were executed without any payment at all. The discount would have far exceeded the amount due on each of these notes. As to the other notes, they

---

$100 due March 31, 1940, six months at six percent, $3;
$100 due April 30, 1940, seven months at six percent, $3.50;
$100 due May 31, 1940, eight months at six percent, $4;
$100 due June 30, 1940, nine months at six percent, $4.50;
$100 due July 31, 1940, ten months at six percent, $5;
$100 due August 31, 1940, eleven months at six percent, $5.50;
$100 due September 30, 1940, twelve months at six percent, $6.

would be discounted proportionately, depending upon the actual due date. All the notes, applying the discount literally, could have been discharged the day after they were executed by the payment of slightly over $7,500. It is inconceivable to believe that the parties intended to contract for the sale of property, apparently having a value of at least $30,000, upon a basis whereby the entire purchase price could be discharged immediately by payment of such a small part of the value of the property.

Both parties now claim that there was a mistake in drafting the notes or the mortgage. They differ as to what the mistake was. That they were both confused as to how the discount should work out is equally evident. Defendants, after the dispute arose and after tendering a check in the sum of $4,389.73 in payment of the balance which they then claimed was still due, came to the conclusion that they owed nothing, but, to the contrary, that the contract had been overpaid in the sum of $345. Plaintiff, on the other hand, after offering to accept $8,412.34 as the unpaid balance, found by audit that there was still $20,841.25 due. Both parties concede that the amount actually paid on the obligation totals $20,480.29, or slightly more than two-thirds of the principal stated in the mortgage without adding any interest. Had interest been computed at the rate of six percent per annum and added to the notes, the discount would then have offset the unearned interest to the date of payment, and Steenberg would have received the principal, plus interest at six percent per annum to the date of payment. Obviously, that was what the parties had in mind. The evidence amply sustains the court's finding to that effect, and it is difficult to see how any other conclusion could be sustained.

■ Defendants contend that even though there was a mistake in drawing the notes plaintiff's action is barred by laches. Where a party seeks to enforce a right based upon a mistake, he is not chargeable with laches until he discovers the mistake, or until he is chargeable with knowledge of facts from which, in the exercise of proper diligence, he ought to have discovered it. Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156. Plaintiff acted with diligence after

discovering the mistake. Anderson had complete charge of drafting and executing the notes. He alone computed the interest to be added to the principal. Likewise, he computed the discounts that he claimed when prepayments were made. The mortgage correctly stated the amount due. We cannot say that plaintiff failed to exercise reasonable diligence in discovering the mistake in view of the facts in this case.

■ It is doubtful whether the defense of laches is open to defendants at all. By their counterclaim, defendants ask for affirmative relief by way of cancellation of the notes remaining in plaintiff's hands and judgment against plaintiff for the amount they contend has been overpaid. The defense of laches is not available where each of the parties seeks affirmative relief against the other in reference to the same transaction. In that case, neither may assert that the other was guilty of laches. Here, both parties failed to discover the mistake until about the same time. When it was discovered, plaintiff claimed that a great deal more was due than defendants had computed. Defendants, on the other hand, claimed that nothing was due. Under these circumstances, laches is available to neither. 30 C. J. S., Equity, § 114; In re Estate of Palm, 210 Minn. 77, 297 N. W. 765; Southern Pine Lbr. Co. v. Ward, 208 U. S. 126, 28 S. Ct. 239, 52 L. ed. 420; Kimberly-Clark Co. v. Patten Paper Co. Ltd. 153 Wis. 69, 140 N. W. 1066.

■ Still another essential element to the doctrine of laches is prejudice to the other party. 4 Dunnell, Dig. & Supp. § 5351. Defendants contend that they have been prejudiced here, in that Anderson is now dead. However, if we rely entirely upon the documentary evidence, which has not changed by the lapse of time, still it would be difficult to hold other than as the trial court did. Defendants are asked to do no more than to pay the amount which the parties clearly contemplated at the time the transaction was consummated. No showing of prejudice has been made.

We have carefully examined all other assignments of error, but the above are determinative of the issues of the case. We find no grounds for reversal.

At the time payments were first made in advance of the due date, Anderson applied such payments, which were largely the proceeds from the sale of machinery and equipment, on the notes first to become due. Plaintiff objected to such application, insisting that such prepayments must be applied upon the last notes to come due. Thereupon Anderson acquiesced in such application. Both parties proceeded under the mistaken belief that the face of the notes correctly stated the amount due. The notes were cancelled and returned to the maker as they were discharged by such application. The court has now found that the amount was incorrectly stated and that, as a matter of fact, the indebtedness was not discharged. Had Anderson known the correct amount due on the notes, he might conceivably have insisted on applying the payments on the notes first to become due. There was no mortgage on the equipment at the time of such sale. Had no designation been made as to application, the ordinary rule that payments would discharge the debt first due would have applied. 5 Dunnell, Dig. & Supp. § 7459. In the absence of an agreement to the contrary, the debtor would have had the right to apply the payments as he saw fit. *Id.* § 7457. It is no doubt true that the payments were applied on the last part of the debt first by agreement of the parties, and the trial court has so found, but we believe that the trial court's finding is based upon evidence of an agreement between the parties, which agreement is founded upon a mutual mistake of fact as much so as the mistake relating to the amount of the notes. Had the payments been applied on the first part of the indebtedness, the mortgage would have been in good standing at the time of the trial, and defendants would still have several years in which to discharge the balance. In view of the fact that the notes were improperly drawn, we believe that the trial court could have applied the payments on the indebtedness as shown by the mortgage on a basis whereby the first payments would apply on the first amount due, and, under its equity powers, could have permitted defendants thereby to place the mortgage in good standing, eliminating the danger of losing the property by foreclosure if the whole amount is not now paid or paid during the redemption

period. In view of the fact that there is no evidence of fraud, the equitable disposition of the matter would have been to determine the amount still due after application of all payments on the entire debt as shown by the mortgage and to permit defendants to discharge the balance according to the terms of the mortgage, instead of permitting plaintiff to declare the whole amount due on account of a default which has occurred because of a mutual mistake as to the amount due and has made possible a foreclosure of the mortgage at this time. However, in view of the court's findings and the state of the record, there is nothing we can do but affirm. We do so, however, without prejudice to the right of defendants to apply to the court for a final disposition of the case along the lines here suggested.

Affirmed with leave to defendants to apply to trial court for disposition in accordance with this opinion.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

