## VIKING AUTOMATIC SPRINKLER COMPANY v. VIKING FIRE PROTECTION COMPANY AND ANOTHER.

159 N. W. (2d) 250.

May 10, 1968—Nos. 40,705, 40,706.

---

*Whitson Rogers, Thomas E. Sands,* and *Johnson & Sands,* for appellant Viking Fire Protection Company.

*Laurence D. Smith, Schmidt, Smith & Howlett, Thomas E. Sands,* and *Johnson & Sands,* for appellant The Viking Corporation.

*Doherty, Rumble & Butler, Jack C. Foote,* and *Lewis L. Anderson,* for respondent.

NELSON, JUSTICE.

In this action plaintiff, Viking Automatic Sprinkler Company, sought to restrain defendant, Viking Fire Protection Company, from doing business in this state under that name. Intervenor, The Viking Corporation, sought damages from plaintiff for its use of the term "Viking" in its business name and to restrain it from such use in the future. Defendant and intervenor appeal from a judgment of the Ramsey County District Court in plaintiff's favor.

If all conflicts in the evidence are resolved in favor of the prevailing party below, the facts appear to be as follows: Plaintiff is a Minnesota corporation organized December 6, 1924, under its present name and engaged in designing and installing automatic sprinkler systems in commercial buildings in this state. The Viking Corporation was organized in the State of Michigan in 1920 and is a manufacturer of such fire protection equipment for use in commercial buildings.

Defendant, a Missouri corporation also engaged in selling and installing fire protection equipment, was first incorporated in 1926 under the name Walton Viking Company. Under that name it was authorized to do business in Minnesota from 1937 until it withdrew from this state August 5, 1947. Defendant's name was changed to Viking Fire Protection Company in 1958 and again changed to Water and Waste Company January 2, 1962. At that time defendant formed a subsidiary also named Viking Fire Protection Company. The subsidiary became qualified to do business in this state December 1, 1964. On March 23, 1965, de-

fendant, then Water and Waste Company, again changed its name to Viking Fire Protection Company and filed articles of dissolution for the subsidiary in Missouri. The subsidiary withdrew from the State of Minnesota April 23, 1965, and at the same time defendant obtained a certificate of authority to do business here under the name Viking Fire Protection Company.

Sometime between 1924 and 1937, plaintiff and intervenor had an agreement, apparently oral, by the terms of which plaintiff could sell some product or products, not defined, manufactured by the intervenor corporation. That agreement, whatever its terms, was canceled by intervenor sometime in 1938. On January 28, 1937, defendant, then incorporated under the name Walton Viking Company, became licensed in Minnesota and engaged in the business of a contractor-installer of automatic fire protection equipment, selling intervenor's products until Walton Viking withdrew from the State of Minnesota on August 5, 1947. After defendant's subsidiary qualified to do business here in December 1964, it sold intervenor's products until its withdrawal in April 1965. Since then defendant has sold intervenor's products in this state.

Beginning early in 1965 after defendant had become licensed as a foreign corporation to do business in Minnesota, plaintiff began to receive telephone calls, letters, and other communications relating to jobs of Viking Fire Protection Company. Such inquiries continued up to the time of trial. On June 23, 1965, plaintiff commenced its action against defendant, seeking damages by reason of the conduct of defendant in doing business under a name so similar to that of plaintiff and praying for the judgment of the court that defendant be restrained from doing business in the State of Minnesota under the firm name and style of "Viking Fire Protection Company." After being permitted to intervene as a defendant, The Viking Corporation answered, alleging that plaintiff has not been authorized to use the term "Viking" in its name since "termination of its license with the Viking Corporation on November 26, 1938" and that in continuing to use the name "Viking" plaintiff represents that it is holder of a license to handle intervenor's products. Intervenor sought damages, but on trial abandoned that claim, and sought to restrain plaintiff from utilizing the term "Viking" in its business name in the future.

Apparently, all parties admit that the existence of plaintiff under the name of Viking Automatic Sprinkler Company and defendant under the name of Viking Fire Protection Company has caused confusion among potential customers.

The record is clear that after the termination of the sales agency contract between plaintiff and intervenor in 1938, plaintiff continued in the business of selling and installing sprinkler systems in Minnesota under the name Viking Automatic Sprinkler Company, even though it was no longer selling the Viking line of equipment. At the present time, plaintiff is selling fire protection sprinkler systems manufactured by Star Sprinkler Corporation. The officers of plaintiff also own a subsidiary, VASCO, Inc., which sells fire protection equipment in eight states but not in Minnesota.

Since 1938, intervenor has been selling its sprinkler systems in Minnesota through defendant's predecessor, Walton Viking Company; Hudson Viking Company; defendant's subsidiary, Viking Fire Protection Company; and defendant since its registration in Minnesota under that name on April 23, 1965. The trial court found (Finding IV):

"That after its incorporation, the exact date not being established, the plaintiff became a sales agent of the intervenor in the state of Minnesota, and continued as such until some time in 1937 or 1938, at which time the sales agency contract was terminated. The plaintiff, however, continued to do business as sales agent and installer of fire protection equipment or automatic sprinkler systems, without interruption, from the time of its incorporation to the present time, and has an established business of selling and installing such equipment in Minnesota, which it has built up under its corporate name."

It found (Finding V) that defendant's subsidiary, under the name Viking Fire Protection Company, qualified to do business in Minnesota on December 1, 1964, but withdrew from the State of Minnesota about April 23, 1965, when defendant was registered and qualified to do business as a foreign corporation in the State of Minnesota.

It also found that (Finding VI) until the commencement of this action by plaintiff, the intervenor had never objected to plaintiff continuing to

do business under its corporate name, although it was well aware that plaintiff was so doing, and on the contrary, acquiesced therein. The court further found (Findings VIII and IX):

"That plaintiff has acquired by continuous use since 1924 the exclusive right to, and a protectable interest in, its trade name or corporate name with reference to the sale of fire protection equipment of the kind which it sells and installs in the territory of the special group market, namely, the state of Minnesota, where it has operated. That the defendant by becoming authorized as a foreign corporation to do business in the state of Minnesota under its corporate name in 1965 and actually doing business in this state under that name has unfairly used a confusing simulation of the plaintiff's trade name, whereby the ordinary user or prospective buyer of fire protection equipment is reasonably likely to be deceived as to the identity of the service or business and is misled into believing that he is doing business with the plaintiff when he is in fact doing business with the defendant.

"That defendant's use of its present corporate name in connection with the sale of fire protection equipment in Minnesota has caused confusion among customers and prospective users of the fire protection equipment, which has resulted in damage to the plaintiff's established business."

The court concluded that intervenor was not entitled to any relief against the plaintiff and that plaintiff "is entitled to an injunction restraining defendant from continuing to use its corporate name or any confusing simulation of the plaintiff's corporate or trade name in connection with the sales of fire protection equipment of the general kind sold by both plaintiff and defendant." The court thereupon ordered the judgment entered, from which defendant and intervenor have appealed.

■ Both defendant and intervenor contend that the court erred in making Findings V to IX and in refusing to strike them and to make other findings proposed by them.

It became the prerogative of the trial judge, sitting in the instant case without a jury, to resolve the conflicts in the testimony and to determine which of the litigants had the better equities, and on those issues,

the trial judge found for plaintiff. The scope of this court's review is a careful examination of the record to ascertain if the evidence as a whole fairly supports the findings and if these in turn support the conclusions of law and the judgment. While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must consider the testimony in the light most favorable to the prevailing party.

We are governed here by the rule that when an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence. We have said that such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. See, G. C. Kohlmier, Inc. v. Albin, 257 Minn. 436, 101 N. W. (2d) 909; Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660; Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708; Nielsen v. City of St. Paul, 252 Minn. 12, 88 N. W. (2d) 853; 1B Dunnell, Dig. (3 ed.) § 411, and cases cited.

■■■ Examination of the record satisfied us that it supports the findings of the trial court. Intervenor alleged that plaintiff acquired its initial right and authority to use the term "Viking" pursuant to a license granted by intervenor to the organizer of plaintiff, one Vallila, in November 1924 and that plaintiff is now barred or estopped from preventing the use of the term in conjunction with the sale of intervenor's products by intervenor or its duly authorized licensees. However, the only evidence in the record with relation to any arrangements or agreements between plaintiff and intervenor is the following testimony given by Reuben L. Anderson, president of plaintiff:

"Q. Referring to [a deposition given by the witness] do you recall being asked these questions and giving these answers:

\* \* \* \* \*

" 'Q. You knew, did you not, at that time that their license agreement with the Viking Corporation had expired sometime in 1938 and had not been renewed?

" 'A. Yes. I knew that and I knew the details of why it wasn't.'

"A.   I still know the details.

"Q.   Do you recall answering that question, 'yes'?

"A.   Yes, I was told very emphatically by Mr. Vallila that he lost his license and why.

"Q.   The point is for this lawsuit, you knew that Vallila's license with the Viking Corporation had expired in 1938 and had not been renewed, did you not?

"A.   Yes, definitely."

Richard T. Groos, president of intervenor, testified that intervenor had but one written sales agreement and that it is with Viking Automatic Sprinkler Company of Chicago. When queried about intervenor's "license agreements," he said that "[w]e mean a sales arrangement with a particular company." Thus, intervenor failed to present any evidence of the terms and conditions of its sales arrangement with Vallila or with plaintiff. Anderson's testimony did not supply such evidence. The burden of proving the alleged license, whether in writing or of any other character, rested upon the intervenor. Obviously, intervenor did not meet that burden and thus did not prove its claim that plaintiff acquired its initial right and authority to use the term "Viking" pursuant to a license granted by intervenor.

The record does support the findings that plaintiff has continued to do business as a sales agent and installer of fire protection equipment or automatic sprinkler systems without interruption from its incorporation in 1924 to the present and has an established business of selling and installing such equipment in Minnesota which it has built up under its corporate name; that by continuous use since 1924 plaintiff has acquired an exclusive right to and a protectible interest in its corporate name with reference to the sale of fire protection equipment of the kind it sells and installs in the territory where it has operated under that name; that until the commencement of this action intervenor had never objected to plaintiff's doing business under its corporate name, although well aware that plaintiff was so doing, and acquiesced in its doing so; and that defendant by adopting and doing business in this state under its name has unfairly used a confusing simulation of plaintiff's trade name.

■ As to the failure to find certain facts, we find no error in this. What we said in Johnson v. Grady, 187 Minn. 104, 107, 244 N. W. 409, 410, is applicable here:

"There was a motion for a number of amended findings of facts and amended conclusions of law. A number of assignments of error are based on the refusal of the court to make such amendments. As we view the record, the findings of fact we have considered and passed upon are decisive of the case, and it is not necessary for us specifically to discuss proposed findings which would not change the result."

Later, in Johlfs v. Cattoor, 193 Minn. 553, 259 N. W. 57, this court said, in ruling adversely to the appellant:

"The evidence does not call for or compel the amended findings requested by defendant, and the refusal to make the same was not error."

■ Intervenor quotes from the court's memorandum. We might point out that the memorandum was not made a part of the court's findings and cannot under our decisions be used to contradict or impeach the court's specific findings. See, 1B Dunnell, Dig. (3 ed.) § 338; Kipp v. Clinger, 97 Minn. 135, 137, 106 N. W. 108, 109; Kleidon v. Glascock, 215 Minn. 417, 10 N. W. (2d) 394. Under these authorities the court's memorandum, not having been made a part of its order, may be referred to only for the purpose of throwing light upon or explaining the decision.

■ Plaintiff contends that Minn. St. 301.05, subd. 2, is the controlling statute. It provides:

"The corporate name shall not be the same as, nor deceptively similar to, the name of any other domestic corporation or of any foreign corporation authorized to do business in this state unless

"(1)   such domestic or foreign corporation is about to change its name, or to cease to do business, or is being wound up, or such foreign corporation is about to withdraw from doing business in this state, and

"(2)   the written consent of such other domestic or foreign corporation to the adoption of its name or a deceptively similar name has been given and is filed with the articles of incorporation."

Plaintiff contends also that Howards Clothes, Inc. v. Howard Clothes

Corp. 236 Minn. 291, 52 N. W. (2d) 753, and Mayo Clinic v. Mayo's Drug and Cosmetic, Inc. 262 Minn. 101, 113 N. W. (2d) 852, fairly state the applicable law in cases of the character of the case at bar.

The question before the court in Howards Clothes was (236 Minn. 298, 52 N. W. [2d] 758):

"Is defendant's name 'Howard Clothes of New York, Inc.' so confusingly similar to that of plaintiff's name 'Howards Clothes, Inc.' that the public, as represented by the ordinary purchaser in plaintiff's market, is likely to be misled into believing that defendant's products are those of the plaintiff?"

This court in that case, in disposing of the issue of confusing similarity, said (236 Minn. 299, 52 N. W. [2d] 759):

"* * * [W]e shall assume, *without so deciding*, that plaintiff and defendant are doing business in the same market or trade area. In this assumed market, defendant's initial use of the name Howard was subsequent to that of the plaintiff. Through their respective founders or predecessors, the parties adopted the same personal name in good faith. A personal name, whether it be a surname or a given name, may become a tradename. The right of a corporation to use the personal name of one of its founders or incorporators is determined by the same principles applicable to an individual. A subsequent user of a personal name, though it be his own, may not, even in the exercise of good faith, use such name as a tradename in a market where *another has acquired a prior right to use the same name with respect to related goods,* unless such subsequent user accompanies the name with a distinguishing legend—or with some other appropriate explanation or device—which will eliminate any reasonable likelihood that the ordinary purchaser will mistake the subsequent user's goods for those of the prior user." (Italics supplied in part.)

In the Mayo case, this court held that while one has the right to use his own name in connection with his trade or business he cannot use it in a way which is likely to deceive the public. This court also said that plaintiff in an unfair competition case is entitled to injunctive re-

lief when it has shown detriment to itself or to the public resulting from defendant's actions.

In Metal Craft Co. v. Metalcraft H. Corp. 255 Mich. 642, 239 N. W. 364, the Supreme Court of Michigan construed a statute prohibiting similarity in corporate names which will lead to confusion or deception as prohibiting confusion of corporate names without regard to whether unfair competition results. It held also that the confusion must be such as would exist in the mind of a person of ordinary intelligence. In holding that defendant should have been enjoined from using its name, the court in the Metal Craft case said (255 Mich. 646, 239 N. W. 366):

"* * * Here the defendant's name was naturally calculated, even though without design, to confuse it with plaintiff's in the trade, the confusion which resulted was such as would ordinarily have been anticipated, and the statute applies."

See, also, Universal Credit Co. v. Credit Corp. 309 Mich. 608, 16 N. W. (2d) 91.

In the instant case plaintiff presented evidence establishing its use of its corporate name since 1924 and evidence from which the trial court could properly find that defendant's use of its present corporate name in this state—begun by its subsidiary in December 1964 and by defendant April 23, 1965—has caused confusion among customers and prospective users of fire protection equipment. Thus, § 301.05, subd. 2, has application.

Intervenor and defendant rely upon Progressive Welder Co. v. Collom (D. Minn.) 125 F. Supp. 307, as controlling in their favor. There two Michigan corporations sought to enjoin their former agent, who was a Minnesota resident, and a Minnesota corporation organized by him from using the words "Progressive Welder" as part of their business name or designation. The plaintiffs, Progressive Welder Company and Progressive Welder Sales Company, were incorporated under their present names in 1935 and 1950 respectively under the laws of the State of Michigan. The Progressive Welder Company, since shortly after its incorporation, engaged in the manufacture and sale of welder equipment and supplies and over the course of years expanded its sales market to in-

clude the principal industrial states. It appeared from the evidence that Progressive Welder Company through extensive advertising and sales promotion obtained a position of recognized importance in the field, particularly with respect to industrial or production type welding equip- ment, and made sales directly or through its sales dealers in many states, including Minnesota. In the spring of 1947, it adopted a policy of identi- fying its sales representatives in each of the respective sales territories as "Progressive Welder Sales Company of" the state in which the repre- sentative was located. The first such contract was executed in April 1947. By September 1948 seven additional contracts were in effect covering several sales territories and by September 1, 1949, the number had increased to 15. The adoption of such form of name on the part of the sales representatives in Minnesota and elsewhere was not the result of express written agreement or license but was made at the suggestion and with the consent of the Progressive Welder Company as an ex- pression of its general sales policy. In the spring of 1949, defendant Col- lom entered into an arrangement with the Welder Company whereby he was given the right to sell the company's products in the State of Minnesota and in portions of adjoining states. A formal franchise agree- ment was executed May 9, 1949. In this initial contract and subsequent contracts, Collom was described as doing business as the Progressive Welder Sales Company of Minnesota and in August 1949 he filed notice of intention to adopt such business name under Minn. St. 333.01.

In September 1950 when the time arrived for the execution of a new one-year agreement the sales company, having taken over dealings with the local representatives, executed the same in substitution for the Progressive Welder Company. However, when that agreement expired by its terms no further formal agreement was executed, but defendant Collom continued for some months to represent the sales company on an informal basis. In any event, his authority to do so terminated not later than December 31, 1952. Collom then began to sell other lines, but continued to do business in Minnesota and surrounding states under the same name and circulated printed cards in the same area reading "Pro- gressive Welder Sales Company of Minnesota, Inc." He and the cor-

porate defendant claimed that Collom obtained rights in the name by his use of it prior to the time the 1949 sales agreement was executed.

It was held in the Progressive Welder case that the fact that one defendant in an unfair competition action had adopted the business designation in dispute prior to the execution of a formal contract whereby he became an agent of plaintiff would not give him a prior right to such designation in view of the fact that his adoption of such designation was obviously done with the consent of the plaintiff.

The court noted the case of Howards Clothes, Inc. v. Howard Clothes Corp. *supra,* and said that that case was not conclusive that the addition of the words "of Minnesota" was sufficient to so differentiate the parties as to obviate possibility of confusion. It commented that the relief granted in the Howards Clothes case was strictly restricted because of the clear showing that defendant was in complete good faith and, furthermore, that that case did not hold that such a difference in names would compel a conclusion that there was no reasonable possibility of confusion but only that the trial court's finding to that effect was not clearly erroneous.

Clearly, the fact situation in the Progressive Welder case differs from the one here. Defendant and intervenor in the case at bar were unable to produce any written evidence from their files of intervenor's having issued any license to anyone in the State of Minnesota in 1924 when plaintiff corporation was organized and certainly none between that time and 1937 when defendant corporation under the name "Walton Viking Company" first qualified to do business in Minnesota. There is no evidence to indicate what kind of sales agreement existed between intervenor and Vallila before plaintiff's incorporation. Thus, there is no evidence that the designation adopted by plaintiff in 1924 was done under authorization of intervenor or with its consent.

Intervenor contends that the term "Viking" has acquired a significant meaning and reputation in connection with its products, that plaintiff by using the term has used and taken advantage of intervenor's property rights, and that plaintiff should not be permitted to continue to use the term in its name. This court in the Howards Clothes case said (236 Minn. 292, 52 N. W. [2d] 755):

"Although courts will protect the use of a name that is so identified with a product that it has acquired a secondary meaning, the protection need not be any greater than is reasonably necessary to accomplish the desired purpose."

The proof in the instant case falls short of establishing that the term "Viking" as used by defendant and intervenor has acquired the necessary secondary meaning referred to in the Howards Clothes and the Progressive Welder Company cases.

Intervenor has called attention to the recent case of Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp. (N. D. Ga.) 254 F. Supp. 743. There plaintiffs, who owned a nationwide chain of "Americana" hotels, sought to enjoin defendant's use of the word "Americana" in connection with the operation of its motel in Atlanta. It was urged in that case by defense counsel that the word "Americana" has for many years been a word of such general descriptive use, and is therefore so weak as a trademark, that plaintiffs could not make its use by others the subject matter of injunctive relief. The defense also proved extensive use of the word "Americana" for many years prior to the adoption by either plaintiffs or defendant in connection with many articles and products. However, prior to its adoption by plaintiffs for a hotel or motel, it had not been so used. Defendant proved without dispute that there are a number of hotels in this country by the same name, as to which no confusion exists. The court agreed that this was undoubtedly true but said that each case of trademark infringement or unfair competition must be decided upon its own facts.

That principle applies here. There is no evidence in fact in the case at bar to permit application of the rule that upon the termination of a franchise or license the licensee may not continue to use the name or trademark. The claim on the part of defendant and intervenor that the fact that plaintiff holds a charter from Minnesota does not prevent the court from granting intervenor relief for infringement of name or trademark may be correct, given a certain set of facts, but it is not determinative where the necessary facts are lacking as they are in the instant case. United States Ozone Co. v. United States Ozone Co. of America (7

Cir.) 62 F. (2d) 881, cited by defendant and intervenor, therefore is not controlling here. Of course, where the use of a name is unnecessary other than to trade on another's good will and there is no priority of right, such use will constitute unfair competition and will be enjoined.

Defendant and intervenor cite cases to support the statement that delay in seeking relief is no bar when an infringer had knowledge of the fact he was infringing and deliberately set out to capitalize on the good will of the owner. Again, proof which would make that rule applicable in the case at bar is lacking, so the cited cases of Rothman v. Greyhound Corp. (4 Cir.) 175 F. (2d) 893, and Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. ed. 526, are not controlling here.

Defendant and intervenor cite Steenberg v. Kaysen, 229 Minn. 300, 39 N. W. (2d) 18, and Lemmer v. Batzli Elec. Co. 267 Minn. 8, 125 N. W. (2d) 434, in support of their contention that, if both plaintiff and defendant seek affirmative relief against the other, neither can assert the other is guilty of laches. Neither case is applicable here. As the trial court said in its memorandum, the case does not present a situation, the determination of which depends upon any question of laches on the part of intervenor, but rather it presents a state of facts which clearly shows that plaintiff's right to the name it uses is prior to the rights of anyone else and that both intervenor and defendant by their conduct over a long period of years have recognized that fact.

We conclude that the trial court's findings cover all relevant facts and are in all respects supported by the evidence and that the conclusions of law are compelled by the findings. Thus, on the record herein, the judgment appealed from must be affirmed.

Affirmed.