Dorthy JACKEL, et al., Respondents,

v.

Jon W. BROWER, Appellant,

County of Steele, et al, Defendants.

No. C2–03–231.

Court of Appeals of Minnesota.

Sept. 16, 2003.

James P. Peters, Karna M. Peters, Peters & Peters, P.L.C., Alexandria, for respondents.

Gary W. Koch, Dustan J. Cross, Sara N. Wilson, Gislason & Hunter, L.L.P., New Ulm, for appellant.

Considered and decided by HARTEN, Presiding Judge, and STONEBURNER, Judge, and PARKER, Judge.*

## OPINION

STONEBURNER, Judge.

Respondents Dorthy and David Jackel sued appellant Jon W. Brower, Steele County, and Steele County's planning director asserting numerous claims arising out of Brower's construction of hog-confinement barns, including a claim that the facility built in 1996 violates the county's setback requirements. Brower filed this interlocutory appeal from the district court's issuance of an injunction compelling the county to enforce the setback requirement and compelling Brower to "permanently abate the violation" of the setback requirement. Because the district court abused its discretion by granting an injunction without determining that there is no adequate legal remedy and that an injunction is necessary to prevent great harm and irreparable injury, we reverse and remand.

## FACTS

In 1996, appellant Jon W. Brower applied to Steele County for a building permit to construct an 800–animal–unit confinement facility.[1] Steele County's zoning ordinance provides that "no new animal feedlots or manure storage facilities shall be located closer than 1,000 feet from a neighboring residence." Brower "stepped-off" what he considered to be the distance between his proposed facility and respondents Dorthy and David Jackel's residence and submitted a handwritten drawing to the county showing that the facility would be located 1,065 feet from the Jackels' residence. The county issued the building permit.

By affidavit, Brower asserts that before construction of the facility in 1996, he spoke to David Jackel, who did not oppose the facility or its location. David Jackel's affidavit denies that such a conversation occurred. Dorthy Jackel's affidavit states that she knew nothing about Brower's plans until she noticed "digging" on his property in 1996, whereupon she called a person in the county planning and zoning department and asked "what's up?" Dorthy Jackel states that she was told that Brower had a permit to build the facility and that "there is nothing you can do; it's a done-deal."

In 1998, Brower obtained a conditional-use permit[2] allowing him to construct a second 800–animal–unit facility on his property. The record does not contain any evidence that the Jackels objected to this facility. But in July 2001, the Jackels complained to Steele County Planning Director Dale Oolman about odors from Brower's property and indicated their concern that the 1996 facility is too close to their residence. Oolman concluded that the 1996 facility is 52 feet inside the set-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. An animal unit is defined in the county's zoning ordinance as "[a] unit of measure used to compare differences in the production of animal manure that employs as a standard the amount of manure produced on a regular basis by a slaughter steer or heifer." The ordinance provides that one swine over 55 pounds equals 0.4 animal units.

2. Under the county's zoning ordinance, a conditional-use permit was not required for the first facility, and is only required for feedlots with more than 1,000 animal units in an "A–1" Agricultural District.

back, but he also concluded that requiring Brower to move the facility to comply with the 1,000–foot–setback requirement will not address the Jackels' concerns about odor. Oolman recommended that Brower agree to additional odor-control measures, and the Steele County Board of Adjustment supported additional odor mitigation rather than strict enforcement of the 1,000–foot–setback requirement.

In June 2002, the Jackels sued Brower, the county, and Oolman, requesting, among other relief, that a writ of mandamus be issued by the district court compelling the county to enforce the setback requirement. The district court granted summary judgment to the Jackels on the setback claim and issued an injunction compelling the county to enforce the setback requirement and compelling Brower to abate the violation. All claims except the Jackels' claim of nuisance have been disposed of in pretrial motions. Brower filed this interlocutory appeal from the injunction, arguing that the district court abused its discretion by summarily issuing an injunction because the county acted reasonably by attempting to address the purposes underlying the ordinance without strictly enforcing the setback requirement and because injunctive relief is not necessary. Brower also argues that the district court abused its discretion by concluding that the doctrine of laches does not bar the Jackels' claims.

## ISSUES

I. Did the district court abuse its discretion by ordering injunctive relief to address a zoning-ordinance violation without determining that there is no appropriate legal remedy and that an injunction is necessary to prevent great and irreparable harm?

II. Did the district court abuse its discretion by determining that "unclean hands" prevents appellant from asserting the doctrine of laches?

## ANALYSIS

On appeal from summary judgment, an appellate court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A court shall grant a motion for summary judgment

> when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). An appellate court "must view the evidence in the light most favorable to the party against who judgment was granted." *Id.* No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc., v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted).

On review of a district court's determination regarding the validity of a zoning decision, the appellate court makes an independent examination of the county's decision without according any special deference to the same review conducted by the district court. *See Hay v. City of Andover*, 436 N.W.2d 800, 803 (Minn.App. 1989).

> An appellate court examines the action of the [county] to determine whether it was arbitrary or capricious, or whether the reasons articulated by the [county] do not have the "slightest valid-

ity or bearing on the general welfare," or whether the reasons were "legally sufficient and had a factual basis."

*Mohler v. City of St. Louis Park,* 643 N.W.2d 623, 630 (Minn.App.2002) (citing *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983)).

## I.

This court reviews orders granting permanent injunctions under an abuse-of-discretion standard. *Cherne Indus., Inc., v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 91 (Minn.1979). A party seeking an injunction must establish that there is no adequate legal remedy and that an "injunction is necessary to prevent great and irreparable injury." *Id.* at 92.

■ Brower does not dispute that the 1996 facility violates the setback requirement. A survey in the record shows that the building is only 948 feet from the Jackels' residence rather than the 1,000 feet required by Steele County's zoning ordinance. Nevertheless, Brower argues that the district court abused its discretion by granting injunctive relief compelling enforcement of the setback requirement without finding that there is no adequate legal remedy for the violation or that an injunction is necessary to prevent great and irreparable injury. Brower also argues that the Jackels have failed to prove, as a matter of law, that the injuries they complain of are caused by the setback violation.

The district court summarily concluded that the Jackels are "directly injured" by the violation of the 1,000–foot–setback requirement and rejected the county's argument that it has discretion in enforcement of a setback requirement. The district court concluded that a property owner injured by the violation of a zoning ordinance is entitled to injunctive relief, citing *Mohler,* 643 N.W.2d at 634, and *Lowry v.*

*City of Mankato,* 231 Minn. 108, 117, 42 N.W.2d 553, 560 (1950). Although both of those cases resulted in injunctive relief to enforce a zoning ordinance, neither case stands for the proposition that injunctive relief is mandatory or automatic.

*Mohler* involved an action against the city and a property owner by a neighbor who overturned a variance that the city had granted for the construction of a two-story garage. 643 N.W.2d at 627. The opinion focuses primarily on whether the property owners met the requirements under Minn.Stat. § 462.357, subd. 6(2) (2000), for granting a variance under the undue-hardship standard. *Id.* at 631. The opinion notes the difference between a "use" variance (permitting a use prohibited under the zoning ordinance) and a "nonuse" variance (controlling area, height, setback, density, and parking for permitted uses). Statutes prohibit most use variances, but nonuse variances may be granted where the character of the zoned district is not changed. *Id.* at 631–32. The garage in *Mohler* constituted both a use and a nonuse violation of the city's ordinance. In *Mohler,* we determined that because the nonuse violation at issue made the structure inconsistent with the surrounding neighborhood, the spirit and intent of the ordinance could not be met by granting the variance. *Id.* at 632.

*Mohler* cites *Lowry,* 231 Minn. at 117, 42 N.W.2d at 560, and *McCavic v. De Luca,* 233 Minn. 372, 379, 46 N.W.2d 873, 877 (1951), for the proposition that a property owner injured by a zoning violation is entitled to injunctive relief. *Mohler,* 643 N.W.2d at 634. But implicit in the decision is the converse: if the violations had not been inconsistent with the spirit and intent of the ordinance, the neighboring property owners would not have been injured, a variance could have been granted,

and the plaintiff would not have been entitled to injunctive relief.

*Lowry* involved a use violation. The action was against the city to compel revocation of an illegally issued building permit. The court followed the rule that a

> building permit issued in violation of a zoning ordinance by an official lacking power to alter or vary the ordinance is void, and the zoning regulation may be enforced notwithstanding the fact that the permittee may have commenced building operations.

*Lowry,* 231 Minn. at 117, 42 N.W.2d at 559 (citations omitted). The supreme court concluded that the permit issued for the nonconforming use "was absolutely void and that plaintiff is entitled to an injunction for enforcement of the zoning ordinance restrictions." *Id.* at 117, 42 N.W.2d at 560. In *Lowry,* the focus was on the legality of the permit issued and no argument was made that the use, despite a technical violation, conformed to the spirit and intent of the ordinance in question.

In *McCavic,* however, the offending property owner specifically asserted that his 7–foot violation of a 15–foot–setback requirement was so trivial that injunctive relief should not be granted, and that plaintiffs should be left to their legal remedy in an action for money damages. *McCavic,* 233 Minn. at 379, 46 N.W.2d at 877. The supreme court disagreed, stating:

> The houses of plaintiffs are close to the building of defendant. It is not trivial to have a concrete-block building setting some seven feet out in front of a residence in such close proximity to it. Under these circumstances, plaintiffs are not required to accept money damages, nor should they be denied equitable relief to compel compliance with an ordi-

nance operating so clearly in their favor if enforced.

*Id.*

The supreme court addressed the exercise of a government entity's power to regulate nonuse zoning requirements, such as signs and setbacks, in *Arcadia Dev. Corp. v. City of Bloomington,* 267 Minn. 221, 125 N.W.2d 846 (1964). In that case, a property owner sued the city to compel it to issue a permit to build a freestanding sign notwithstanding that the sign would violate the terms of a city ordinance. Arcadia argued that denial of the permit was arbitrary, capricious, and a manifest abuse of discretion because the sign it sought to build was inoffensive and preferable to the type of sign permitted by the ordinance. Affirming the district court's order directing the city to issue the permit, the supreme court stated:

> As a useful rule it has long been stated that a city must act "reasonably," otherwise, its ordinances could not have the effect of overcoming the property rights of others. Its acts must be calculated to effect its legitimate purposes and goals without going beyond the demands of the occasion.... Further, ordinances and actions taken thereunder must be reasonable when applied to individual cases.... [T]here is a strong presumption, although a rebuttable one, favoring action taken by a city. Nor does a court inspect the motives which impel a city council to act.... If the reasonableness of the action of the city council is at least doubtful, or fairly debatable, a court will not interject its own conclusions as to more preferable actions....
>
> ... Unreasonableness is a legal conclusion, made upon examination of the circumstances. If the unreasonableness of an action is plain, clear, manifest, and undoubted, it is a proper subject for

restraint by the court providing it violates substantial rights of others.

*Id.* at 225–26, 125 N.W.2d at 850–51. The court noted that regulations, as applied, must bear a reasonable relation to the purposes they are meant to attain. *Id.* at 226, 125 N.W.2d at 851. "To apply them without proper regard for individual circumstances would clearly risk imposing a useless, and therefore unreasonable and unnecessary, substantial hardship upon individual landowners." *Id.*

Brower argues that his facility is distinguishable from *Mohler* and *Lowry,* because (1) Brower's facility does not constitute a use violation, (2) the facility is not out of character with the surrounding uses, (3) the county did not illegally issue the building permit, and (4) Brower's building does not constitute the kind of harm to the neighbors caused by the building in *McCavic.* We agree that these factors distinguish this case from *Mohler* and *Lowry.* In this case it was error for the district court to have *presumed* on a motion for summary judgment that the Jackels have suffered great and irreparable injury that requires the issuance of injunctive relief. There is nothing in the record to support such a presumption, aside from the Jackels' mere assertion that they are injured by the setback violation. There is no evidence that the setback violation is the cause of any of their specific complaints, which have mostly to do with odor. In addition, we agree that the district court abused its discretion by summarily issuing injunctive relief without any analysis of whether Brower's violation can first be addressed by a legal remedy.

We conclude that the district court must engage in an analysis of the harm caused by the violation, whether there is an adequate legal remedy, and whether an injunction is necessary, giving consideration to the reasonableness of the county's pro-posals to address the violation. Because there are insufficient facts in the record to support summary issuance of injunctive relief, we reverse the order for injunctive relief and remand for consideration of this issue on the record that will be fully developed at trial. By this decision, we do not mean to indicate whether or not injunctive relief is the appropriate remedy in this case.

## II.

Brower also argues that the district court abused its discretion by concluding that the doctrine of laches does not bar the Jackels' claim for injunctive relief. Brower points to the six-year delay after construction of the offending facility before the Jackels' complained and correctly notes that removing the building will constitute a hardship for him, although there appears to be a question of fact about the extent of the hardship.

A district court's decision to apply the doctrine of laches is not a decision on the merits. *See Melendez v. O'Connor,* 654 N.W.2d 114, 117 (Minn.2002) (reaching merits only after deciding as a preliminary matter whether suit should be dismissed for laches). Therefore, even at summary judgment, the decision whether to apply laches lies within the district court's discretion and will be reversed only for an abuse of that discretion. *See Opp v. La-Bine,* 516 N.W.2d 193, 196 (Minn.App. 1994), *review denied* (Minn. Aug. 24, 1994). The question in applying the doctrine of laches is "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant" the requested relief. *Harr v. City of Edina,* 541 N.W.2d 603, 606 (Minn.App.1996) (quotation omitted). "Mere delay does not constitute laches, unless the circumstances were such as to make the delay blamable."

*Elsen v. State Farmers Mut. Ins. Co.*, 219 Minn. 315, 321, 17 N.W.2d 652, 656 (1945) (quotation omitted). A person has knowledge of the right to make a claim when he or she has actual notice of the claim or, in the exercise of proper diligence, ought to have discovered it. *Steenberg v. Kaysen*, 229 Minn. 300, 309, 39 N.W.2d 18, 23 (1949).

The district court determined that the doctrine of laches does not apply because the Jackels did not know about the violation when the facility was built and exercised due diligence to discover the violation. The district court found that the Jackels immediately called the county when they saw the beginning of construction and were told that there was nothing they could do. Brower claims that there is a material fact question about the Jackels' diligence because the county has no record of them expressing any concern about the facility until six years after its construction. In addition, there is an admitted fact dispute about whether Brower and David Jackel discussed the location of the barn before construction. Because there is a question of material fact regarding whether the Jackels acted with due diligence in prosecuting their claims, the district court abused its discretion by rejecting application of laches based on due diligence.

But the district court also relied on the fact that Brower had unclean hands and is therefore barred from asserting the equitable defense of laches. Brower assured the county that the setback requirement would be complied with when he submitted a drawing, with his application for the building permit, that showed the facility as being 1,065 feet from the Jackels' residence. Brower, however, used a highly inaccurate method to measure the setback, purporting to have "stepped off" the distance on property the Jackels assert is wholly unsuited to this type of measure-ment. Brower was 117 feet off of his promise to place the building 1,065 feet from the Jackels' property and violated the setback requirement by 52 feet. A party seeking laches must come with clean hands in order to obtain the benefit of the balancing of the equities. *See Gully v. Gully*, 599 N.W.2d 814, 825 (Minn.1999). Given the cavalier method by which Brower located this facility, which, the record demonstrates he knew could be objectionable to neighbors, we conclude that the district court did not abuse its discretion by disqualifying Brower from asserting the defense of laches.

## DECISION

The district court did not abuse its discretion by precluding appellant from asserting laches to bar respondents' claim for injunctive relief. But the court erred by viewing evidence in the light most favorable to respondents and abused its discretion by summarily granting injunctive relief absent a finding that there is no adequate legal remedy and that an injunction is necessary to prevent great and irreparable injury.

**Reversed and remanded.**

HARTEN, Judge (concurring specially).

Given the court's indication that, "[b]y this decision, we do not mean to indicate whether or not injunctive relief is the appropriate remedy in this case[,]" I concur in the result.